## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

```
----------------------------------------------------------- X
CAYLA LYSTER,                                   :
                                                :
on behalf of herself and all persons similarly  :
situated,                                        :
                                                :          CLASS ACTION COMPLAINT
                                                :
                            Plaintiffs,         :
            v.                                  :          Demand for Trial by Jury
                                                :
AMAZON.COM SERVICES, LLC,                        :
                                                :
                            Defendant.          :
                                                :
----------------------------------------------------------- X
```

Plaintiff Cayla Lyster by and through undersigned counsel, A Better Balance and Vladeck, Raskin & Clark, P.C., on behalf of herself and all others similarly situated, alleges the following against Defendant Amazon.com Services, LLC ("Amazon"):

### INTRODUCTION

1. This case arises out of Amazon's policy of punishing employees who seek to exercise their legal right to reasonable accommodations.

2. Amazon is a multinational company and the country's second-largest private employer. Amazon operates hundreds of logistics facilities and employs about 1.1 million workers across the United States.

3. For years, Amazon has maintained a punitive absence control system under which automated systems track employee attendance, and then automatically impose discipline up to and including termination. Under this system, employees live under constant threat of punishment if they get sick or injured or need time off to care for a family member.

4. Amazon's absence control system does not just punish employees for unexcused absences. It punishes them for absences that are protected by federal and New York State law.

1

This happened to Ms. Lyster when Amazon forced her to stay home while awaiting necessary accommodations for her disability, then punished her for missing work.

5.   Ms. Lyster has been a dedicated employee of Amazon since 2022. Throughout her employment with Amazon, she has successfully performed her job duties. She has Ehlers-Danlos syndrome, a permanent genetic connective-tissue disorder.

6.   When Amazon changed her job duties in late 2023, Ms. Lyster found herself needing minor accommodations, such as a chair to sit on, in order to continue working successfully. Ms. Lyster promptly sought these reasonable accommodations from Amazon. She repeatedly provided rigorous medical documentation to Amazon documenting her medical condition and need for accommodation.

7.   *First*, although Ms. Lyster carefully followed Amazon's protocol regarding accommodation requests, Amazon engaged in substantial delay in accommodating Ms. Lyster, and repeatedly forced her out of work onto unpaid, unwanted, and unnecessary leaves of absence when other work was available. Amazon also subjected Ms. Lyster to recurrent, invasive requests for medical documentation when she had already provided Amazon with more than sufficient information to establish both her permanent disability and her need for accommodation.

8.   *Second*, Amazon subjected Ms. Lyster to cruel, derogatory comments and inappropriate questioning about her medical condition, punishing her for her disability and retaliating against her for attempting to exercise her rights to reasonable accommodation.

9.   *Third*, Amazon punished Ms. Lyster for requesting reasonable accommodations by deducting from her Unpaid Time Off balance ("UPT") and repeatedly threatening her with termination while she was forced to stay home waiting for accommodation.

10.   Amazon not only punished Ms. Lyster in this manner; in fact, Amazon's accommodations and absence control practices violate the rights of all of Amazon's hourly

employees with disabilities. Amazon deducts UPT from those employees who miss work pending a disability accommodation, thereby subjecting them to discipline and possible termination because of their accommodation request.

11. Moreover, Amazon's practices chill employees' exercise of their legal rights, because employees justifiably fear they too will be disciplined and fired if they request reasonable accommodation.

12. Amazon's practice of deducting UPT from hourly employees who are instructed to stay home from work awaiting disability accommodation is centrally administered and uniform across Amazon's locations in New York.

13. Amazon's policy of threatening employees who have negative UPT balances with termination—regardless of whether their absences were legally protected—also applies to all Amazon hourly employees across New York.

14. Ms. Lyster brings this case, seeking injunctive relief, to remedy this unlawful practice and policy on behalf of herself and the other employees similarly situated. Amazon's widespread policies and practices toward similarly situated employees constitute disability discrimination, retaliation, and interference under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"); disability discrimination under the New York State Human Rights Law, N.Y. Exec. Law § 296 *et seq.* ("NYSHRL"); and retaliation for lawful absences under the New York Labor Law, N.Y.L.L. § 215 *et seq.* ("NYLL").

15. Amazon's individual treatment of Ms. Lyster also constituted disability discrimination, retaliation, and interference in violation of the ADA; disability discrimination in violation of the NYSHRL; and retaliation for lawful absence in violation of the NYLL. She seeks individual injunctive relief and damages for these violations.

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction over Ms. Lyster's ADA claims pursuant

3

to 28 U.S.C. §§ 1331 and 1343. This Court has supplemental jurisdiction over Ms. Lyster's NYSHRL and NYLL claims pursuant to 28 U.S.C. § 1367(a).

17. Venue lies in this judicial district pursuant to 42 U.S.C. § 12117(a) and 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices complained of herein occurred within the State in which this judicial district is located.

18. Plaintiff demands that a jury trial be held for this action.

## CONDITIONS PRECEDENT

19. Ms. Lyster timely filed a Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC") on September 11, 2024. This Charge was cross-filed with the New York State Division of Human Rights.

20. On May 8, 2025, the EEOC issued a Determination finding reasonable cause that Defendant violated Ms. Lyster's rights and that Defendant's policy of sending negative UPT notices to employees out of work awaiting accommodation "created a chilling effect."

21. On or about Thursday, August 14, the EEOC issued Ms. Lyster a Notice of Right to Sue. This Complaint has been filed within 90 days of receipt of that Notice.

## PARTIES

22. **Plaintiff Cayla Lyster** is a current employee of Amazon and resident of Rome, New York. She has been an employee since on or about September 7, 2022, and was first hired to work at the WNY3 RSR Delivery Station in Frankfort, New York. On or about May 18, 2023, she transferred to the SYR1 Fulfillment Center, located at 7211 Morgan Road in Liverpool, New York, where she continues to work.

23. **Defendant Amazon.com Services LLC** is a Delaware-registered limited liability company registered to do business in New York and conducting business in New York. Amazon accepts service of process c/o Corporation Service Company, 80 State Street, Albany, New York 12207.

24. Amazon is a multinational company that, upon information and belief, employs more than 1.1 million employees in the United States.

25. Upon information and belief, Amazon operates at least 30 logistics facilities in the State of New York. These facilities include, but are not limited to, fulfillment centers, delivery stations, and sortation facilities. At these facilities, workers rapidly code, pick, pack, sort, and organize items for delivery.

26. At all relevant times, Defendant was Ms. Lyster's employer as that word is defined under the ADA, NYSHRL, and NYLL.

## **FACTS**

Amazon's Punitive Attendance Policies

27.  Amazon's facilities are vast, open-plan spaces employing hundreds of workers amid mazes of equipment, conveyor belts, and automated systems. Workers complete repetitive tasks at a regimented pace, often automatically tracked to minute degrees of precision on their adherence to productivity standards.

28. Amazon subjects its hourly workers to a strict absence control policy ("UPT Policy"). Under this policy, employees start with a bank of a certain number of Unpaid Time Off ("UPT") hours. Amazon deducts UPT from that balance for any absence or lateness that is not covered by another form of approved time off.

29. Once Amazon has deducted all of an employee's UPT hours, the employee enters "negative UPT." Amazon then automatically sends the employee centrally generated emails threatening that if they cannot satisfactorily explain their absences within 48 hours, Amazon will take action pursuant to its disciplinary policy, up to and including termination.

30. In its attendance policy accessible to employees only via a proprietary app known as A to Z, Amazon claims that it "does not deduct UPT when absences are covered by paid time off, one of [its] leave of absence (LOA) policies, Accommodations Policy, or applicable law."

31. But in fact, Amazon's central systems automatically enforce a policy of deducting UPT from all employees who do not have banked leave—including those who are not working because they have pending requests for reasonable accommodations

32. These automatic deductions are applied to employees like Ms. Lyster, who merely requested accommodations and did not want or ask to be forced off the job.

33. In its position statement responding to Ms. Lyster's charge of discrimination before the EEOC ("Position Statement"), Amazon admits to maintaining this policy, stating that "[i]f an associate's leave request has not yet been approved, UPT is used."

34. These employees' UPT balances drain to zero; then, Amazon sends them emails threatening to terminate their employment once they reach negative UPT.

35. Although Amazon claims to refund an employee's UPT if their accommodation request is approved, in practice Amazon routinely fails to do so. As a result, employees reasonably, and often accurately, believe that they may be fired for requesting accommodations.

36. As detailed below, Ms. Lyster came perilously close to termination for her UPT deductions while on an unwanted, unpaid waiting period pending accommodation, despite several attempts to communicate with Amazon and explain her absences.

37. Upon Ms. Lyster's information and belief, similarly-situated hourly logistics facility workers have in fact been fired for their negative UPT status pursuant to Amazon's disciplinary policy, despite their attempts to communicate with Amazon about their absences. Knowing this, Ms. Lyster and her colleagues work under perpetual fear that Amazon will punish them in the same way if they venture to request an accommodation.

38. Amazon's UPT practices are widespread across its logistics facilities, and its attendance-related decisions are made remotely from a centralized department not based at any specific worksite. As Amazon admits in the Position Statement, "[t]he centralized team notifies

associates of their negative UPT balance and asks them for a response to prevent a negative UPT/attendance termination."

39. Amazon could take several steps, at little or no cost to the company, to ensure that absences incidental to employees' requests for reasonable accommodation are reflected in the attendance tracking system and do not lead to discipline, threats, or termination of employment. These actions include, but are not limited to:

a) Changing its attendance system to prevent UPT from automatically being applied to legally-protected absences, including absences Amazon requires employees to take while waiting for reasonable accommodations;

b) Training appropriate staff to adjust employees' attendance records in accordance with applicable law, including New York law; and/or

c) Keeping records of, and reviewing, the reasons for individual employees' absences before deducting UPT or sending them communications threatening to terminate their employment; and

d) If Amazon determines that an absence is not legally protected and deducts UPT, providing the employee with written notice of the basis for that determination.

40. Rather than take these steps, Amazon continues to deduct UPT and threaten to fire employees for legally protected absences, including those who are awaiting accommodation.

Ms. Lyster's Employment and Disability

41. Ms. Lyster has been a hardworking employee of Amazon since 2022. She first joined Amazon as the primary earner in her household, supporting herself and her longtime partner, who could not work due to a medical condition. Ms. Lyster's employment with Amazon allowed her just enough income to pay rent on time and to purchase groceries and hygiene products—survival expenses that her household had always strained to afford.

42. Ms. Lyster has maintained an outstanding performance record at Amazon. As recently as mid-2025, she ranks among the top three employees among her manager's cohort at SYR1. Her performance rating, according to Amazon's qualitative grading system, has never fallen below "Great." Her work has always met Amazon's quantitative productivity benchmarks.

43. Ms. Lyster continues to work successfully with her diagnosis of Ehlers-Danlos syndrome ("EDS"), a permanent genetic connective-tissue disorder affecting the skin, joints, and blood vessels. Ms. Lyster's condition substantially impairs numerous major life activities, including but not limited to bending, squatting, walking, standing, climbing, breathing, and performing certain manual tasks.

44. EDS causes orthostatic hypotension, a form of low blood pressure that occurs when Ms. Lyster stands after sitting, and that can cause her to feel lightheaded or dizzy and, sometimes, to faint. As a result of this condition, Ms. Lyster's health provider recommends that she not climb stairs, ladders, or step stools, and that she be provided access to a chair at her workstation.

45. EDS also causes Ms. Lyster's joints to hyperextend and dislocate and affects her ability to squeeze objects. As a result of her condition, she cannot use a "grab tool" - the instrument some Amazon employees use to access high-up objects - because it requires tight squeezing and/or gripping.

46. Despite these limitations, Ms. Lyster is trained and able to work successfully in a variety of available departments at her Amazon facility, including Manual Induct, Pack Singles Smalls, Modified Pick, Smartpack, and Ship in Original Container ("SIOC").

Amazon Forced Ms. Lyster Off the Job Instead of Granting Her the Reasonable
Accommodations She Needed to Perform Her Job

47. At the WNY3 RSR Delivery Station where Amazon first hired her, Ms. Lyster was able to work without specific accommodations. Her assigned work did not involve reaching for high-up items requiring the use of a step stool or ladder. She worked two- to five-hour shifts—short

enough to work through without needing a seated break. Moreover, at the time, her orthostatic hypotension symptoms were manageable without a chair at her workstation.

48.  When Ms. Lyster transferred to the SYR1 Fulfillment Center in May 2023, for the first several months of her employment, she was assigned to a department called "Pack," which again did not require her to use a ladder.

49. However, in mid- to late 2023, Amazon moved Ms. Lyster to training in a role called "Pick."

50. "Picking" is the process of retrieving a product from elsewhere in the fulfillment center, so it can then be packed and shipped to customers. "Pickers" are assigned items they must "pick," often requiring the use of a step ladder.

51. When Ms. Lyster attempted to train for this role, she experienced joint pain, fatigue, and dizziness throughout her eleven-and-a-half-hour-long shifts.

52. The combination of these factors led Ms. Lyster to seek formal accommodation to manage her disability at work. On or about November 8, 2023, Ms. Lyster submitted a reasonable accommodation request to Amazon, seeking a chair to sit on and an assignment that did not require the use of a ladder. She noted that a transfer to the Modified Pick department would provide an immediate solution to her accommodation needs.

53. Although work was available in Modified Pick, Amazon abruptly and inexplicably forced Ms. Lyster to stop working and stay home, unpaid, while awaiting the outcome of her accommodation request.

54. Amazon barred Ms. Lyster from working on several days between November 20 and December 11, 2023.

55. Amazon's Human Resources Department informed Ms. Lyster that if she failed to report to work during this forced period of leave, her UPT would be deducted, and she would face potential termination. As a result, Ms. Lyster physically reported to her worksite and swiped her

9

badge into the building to avoid being deducted UPT. She commuted 45 minutes every day to clock into work, only to then immediately be sent home, another 45-minute commute.

56. On the days Ms. Lyster commuted to work and badged in and out, she was not deducted UPT. However, she was not paid.

57. On or about December 12, 2023, Amazon finally brought Ms. Lyster back to work. She was assigned to the Modified Pick department, which she had identified weeks prior as an appropriate accommodation for her needs, as well as the Pack Singles Smalls department.

58. After Ms. Lyster engaged in substantial time-consuming advocacy to recoup her lost pay, Amazon paid her for some of these missed shifts, but not all.

Amazon Made Unnecessary, Invasive Medical Inquiries and Revoked Ms. Lyster's Accommodation Despite Knowledge that Her Disability Was Permanent

59. In early June 2024, Onsite Human Resources Business Partner ("BP") Brian K. unexpectedly informed Ms. Lyster that her accommodation was "coming up for review" and that she would need to submit new medical documentation as a result.

60. This news surprised Ms. Lyster. Her disability—and thus her need for accommodation—are permanent conditions. This was already well known to Amazon, because Ms. Lyster's medical documentation supporting her first requests for accommodation explicitly stated that her disability is permanent.

61. The ADA requires that employers' disability-related requests for medical documentation are "job-related and consistent with business necessity." U.S. EQUAL EMP. OPPORTUNITY COMM'N, EEOC-CVG-2000-4, ENFORCEMENT GUIDANCE ON DISABILITY-RELATED INQUIRIES AND MEDICAL EXAMINATIONS OF EMPLOYEES UNDER THE ADA (2000). According to the EEOC's guidance, medical inquiries may be permissible where "the disability or the need for the accommodation is not known or obvious."

62. Ms. Lyster's limitations were obvious to Amazon because her doctor had already carefully documented them and confirmed that they were permanent.

63. Upon information and belief, the reason why Amazon demanded new documentation is because a site-level manager, Charlie D., had complained that Ms. Lyster was receiving accommodations. As noted below, Charlie D. had made several disparaging remarks about Ms. Lyster's accommodation.

64. Nevertheless, Ms. Lyster dutifully complied with the unjustified medical documentation request and submitted new documentation reestablishing both her disability and her need for accommodation.

65. On or about June 5, 2024, Amazon abruptly informed Ms. Lyster via email that it had changed her assignment to the PP Mix department. Amazon's email stated that if she could not work in PP Mix, Amazon would place her on a leave of absence.

66. As Amazon was already aware because of Ms. Lyster's thorough documentation, the PP Mix assignment did not meet Ms. Lyster's disability needs. In PP Mix, employees who cannot stand for the duration of their shifts must use a grab tool to reach high-up objects. Ms. Lyster's disability prevents her from being able to squeeze, and thus use, the grab tool. Her disability also makes it dangerous to repeatedly move from sitting to standing to reach high-up objects, because her blood pressure drops rapidly.

67. Ms. Lyster reiterated that PP Mix did not meet her needs, asked why Amazon had abruptly changed her accommodation, and requested an accommodation that would meet her needs. In response, Charles Jones, Level 7 Senior Operations Manager, told her, "Well, you've changed things so many times, this is just how it's going to be." She understood this to be a reference to her disability accommodation requests.

68. Mr. Jones is responsible for approving accommodations at Ms. Lyster's worksite.

69. Throughout June 2024, Ms. Lyster diligently reported to work, despite the PP Mix assignment. On certain days, Ms. Lyster's managers informally assigned her other available work that complied with her accommodations. On other days, Ms. Lyster's manager was Charlie D., who refused to accommodate her, sending her home instead. Yet again, Ms. Lyster was forced to spend hours commuting—only to be sent home, sometimes without pay.

70. On or about June 24, 2024, Ms. Lyster submitted yet more medical documentation from her health provider, explaining again that PP Mix did not meet her accommodation needs.

Amazon Again Forced Ms. Lyster Out of Work and Threatened to Fire Her

71. In response to Ms. Lyster's accommodation request, Amazon again needlessly forced her off the job.

72. Ms. Lyster remained on an unpaid, unnecessary leave from July 7, 2024, until around August 15, 2024.

73. While Ms. Lyster was at home, unpaid and awaiting accommodation, Amazon deducted UPT from her balance and sent her repeated emails threatening to terminate her employment. These disciplinary threats made Ms. Lyster fear that she would be fired due to her needs and requests for accommodation.

74. During her almost six weeks of forced, unpaid leave, Ms. Lyster inquired about the reason for the lengthy delay in considering her accommodation request. Amazon's Disability and Leave Services department repeatedly told her that it was waiting on Charles Jones, the manager in charge of approving site-level accommodations, to simply respond and approve her accommodation.

75. Mr. Jones's pronounced delay not only prevented Ms. Lyster from returning to work with accommodation but also prevented her from being transferred to other worksites that would accommodate her.

76. Mr. Jones's delay also extended the time period during which Amazon was deducting from Ms. Lyster's UPT balance and threatening her with termination.

77. On or about August 15, 2024, Amazon finally brought Ms. Lyster back to work. Amazon re-assigned her to her earlier accommodation in Modified Pick, as well as Pack Singles-Smartpack and Pack Singles-SIOC.

78. Again, Ms. Lyster engaged in substantial time-consuming advocacy to recoup her lost pay for some of these missed shifts, but not all.

79. Upon information and belief, Amazon's SYR1 facility, which employs up to 3,500 workers and ships up to five million units per week, had available work that would have met Ms. Lyster's accommodation needs throughout this period.

Amazon Continued to Fail to Accommodate Ms. Lyster's Disability Needs

80. Even after returning to work, Ms. Lyster's accommodation problems continued. Although Ms. Lyster's accommodation stipulated that the Modified Pick automated system should only bring Ms. Lyster items that she can reach without use of a step ladder, the automated system repeatedly assigned her high-up items requiring use of the ladder.

81. At times, these inappropriate assignments occurred several times per shift. The system did not permit her to skip or report the violative tasks.

82. Each time these assignments occurred, Ms. Lyster had to stop work to avoid endangering her health. She attempted to reach out to an onsite supervisor or manager for help so she could return to work and meet her productivity metrics.

83. When Ms. Lyster attempted to seek help consistent with her approved accommodation, the supervisors assigned to her site floor frequently refused to comply. For example, Ryan, an Operations Manager, routinely told her: "It's not my job to pick items for you."

84. Ms. Lyster also feared being penalized for taking Time Off-Task ("TOT") while she waited for help. Under Amazon's productivity and performance policies, excessive TOT leads to

disciplinary consequences. During this period, site-level managers frequently questioned Ms. Lyster about her TOT when she was waiting for assistance after Amazon's automated system violated her accommodation.

85. Around August 18, 2024, a manager told Ms. Lyster that Amazon's system had removed her approval for Modified Pick.

86. Ms. Lyster promptly alerted Amazon to this problem. A different manager told her, "It's not a matter of this can't be fixed. It's a matter of Charles [Jones] can't be bothered to put the information in [the system] for you."

87. This failure to accommodate Ms. Lyster's disability frequently forced her, yet again, to cut short her workday, commuting many hours to work only to be sent home. On some of these occasions, Amazon deducted UPT from Ms. Lyster's UPT bank, again penalizing her for Amazon's failure to accommodate her, as well as for her accommodation requests.

Amazon Subjects Ms. Lyster to Repeated Derogatory Commentary and Harassment Regarding Her Disability

88. From the time of her initial accommodation request in November 2023 to November 2024, Amazon subjected Ms. Lyster to a hostile work environment wherein supervisors regularly made derogatory comments about her disability and harassed her for needing accommodations.

89. Around January 2024, when Ms. Lyster informed a manager, Bridget, that she could not use the stairs because her disability increased her risk of passing out, Bridget scoffed, rolled her eyes, and said, "I don't get why you can't go up the stairs."

90. In or around March 2024, Area Manager Charlie D. berated Ms. Lyster for having an accommodation allowing her to work in Pack Singles Smalls, instead of in PPMix. Comparing her to other employees at the worksite, he said, "If you just walk around, you could see them all doing their jobs just fine."

91.  Charlie D. regularly questioned Ms. Lyster's accommodation needs, saying: "I don't understand why you can't just [use the grab tool]"; and "it's not right; you should be able to [do PP Mix].

92.  In or around July 2024, Ms. Lyster documented the above and other incidents in multiple submissions to Amazon's Disability & Leave Services and Human Resources departments.

93.  In or around July 2024, Charlie D. repeatedly challenged Ms. Lyster's chair accommodation in SmartPack, saying "people don't get accommodated to those places."

94.  Around August 7, 2024, Ms. Lyster filed an internal complaint with Amazon Ethics Reporting. She complained of failure to accommodate, retaliation, disability discrimination, and harassment. Amazon closed the investigation, finding no violation of company policy.

95.  Shortly thereafter, in or around October 2024, Charlie D. physically removed Ms. Lyster's chair from her workstation and blocked her from working in Smartpack, where she was assigned per her approved accommodation.

96.  Ms. Lyster continues to work successfully in her full-time role, but is afraid of being subjected to the UPT policy again.

## CLASS ALLEGATIONS

*Class seeking relief under the UPT Policy*

97.  Ms. Lyster incorporates by reference the allegations set forth in the above paragraphs.

98.  Ms. Lyster brings this class action pursuant to Fed. R. Civ. P. 23(a) and (b)(2) on behalf of the following class seeking injunctive relief under the constellation of Amazon's accommodation and attendance policies and practices (hereinafter "Proposed Class"):

> All persons employed by Amazon in its logistics facilities in New York State as hourly workers from November 12, 2022 up to and including the date of any judgment in this case, who sought or intended to seek a disability accommodation from Amazon.

99.  Ms. Lyster is a member of the Proposed Class she seeks to represent.

100. The proposed members of the Proposed Class identified herein are so numerous that joinder of all members is impracticable. Amazon employs thousands of hourly logistics facilities employees in New York, many for relatively brief periods. According to the New York State Department of Health, more than 1 in 5 have a disability.[1] As such, the class consists of at least many hundreds of employees.

101. Questions of law and fact are common to the Proposed Class. The proposed class is cohesive because it pertains to a specific set of policies and practices adopted by corporate and senior management and applied by their central human resources department to employees at stores nationwide, including in New York state. Questions of law and fact that are common to all members of the Proposed Class are:

 a. Whether Amazon's centralized absence control systems contain any mechanism to determine whether employees' absences are protected by the ADA, NYSHRL and/or NYLL before punitive actions are taken;

 b. Whether Amazon maintains a pattern, practice and/or policy subjecting New York hourly logistics facility workers to UPT deductions when they are absent, with no regard for whether those absences are protected by applicable law;

 c. Whether Amazon maintains a pattern, practice, and/or policy of failing to refund UPT to workers whose absences were legally protected, exposing them to potential discipline and termination;

 d. Whether Amazon's negative UPT emails to employees with disabilities who are required or lawfully authorized to be out of work, including pending accommodation, are retaliatory; and

---

[1] New York State Department of Health, *Disability in New York State*, https://www.health.ny.gov/community/disability/prevalence.htm (last updated Oct. 2011).

    e.   Whether Amazon's policies and practices chill workers who need reasonable accommodations in their exercise of their rights.

102. These common questions can be answered with common proof, including but not limited to:

    a.   The existence of unlawfully retaliatory and/or interfering written policies and practices applicable to employees at logistics facilities in New York;

    b.   Evidence about the operation of Amazon's UPT notice and accounting systems;

    c.   Training materials provided to human resource employees and managers about the application of those policies and practices; and

    d.   Evidence of widespread discipline and/or termination of employees temporally linked to their requests for reasonable accommodation.

103. Ms. Lyster's are typical of the claims of the Proposed Class. Specifically, Ms. Lyster was an hourly Amazon employee with a disability subject to the UPT policy; she has been subjected to and damaged by company-wide policies and practices of disability discrimination in employment; and her claims are based upon allegations that she has been adversely affected by those policies and practices in that she faced discipline and threats of termination for legally protected absences; and her claims rest on proof and legal theories common to all proposed class members.

104. Ms. Lyster, as Representative Plaintiff, will fairly and adequately represent and protect the interests of the members of the Proposed Class because: (1) she is willing and able to represent the proposed class and has every incentive to pursue this action to a successful conclusion; (2) her interests are not antagonistic to those of the other class members; and (3) she is represented by counsel experienced in litigating major class actions in the field of employment discrimination and disability rights.

105. Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Amazon has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole. Amazon maintains widespread policies and practices regarding absence control to which it subjects each member of the Proposed Class. A judgment declaring Amazon's actions as to the Proposed Class unlawful under the ADA, NYSHRL, and NYLL; ordering Amazon to align its policies and practices with applicable law; and providing monetary relief incidental to the requested injunctive and declaratory relief would provide adequate relief to the entire Proposed Class as to the claims in this Complaint.

## FIRST CAUSE OF ACTION

### Disability Discrimination
### in Violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112
### (On behalf of Plaintiff)

106. Ms. Lyster incorporates by reference the allegations contained in the previous paragraphs of the Complaint as if fully rewritten herein.

107. Amazon is an employer under the definition set forth in 42 U.S.C § 12111(5)(A).

108. Ms. Lyster was qualified for her job at Amazon, as evidenced by her ongoing tenure and successful performance, and meets the definition of a "qualified individual" under 42 U.S.C § 12111(8).

109. Ms. Lyster's medical condition as described in this Complaint constituted a disability within the meaning of the ADA, 42 U.S.C. § 12102(1):

a. Ms. Lyster's Ehlers-Danlos syndrome is a permanent physical impairment that substantially limits Ms. Lyster in the performance of major life activities, including but not limited to bending, squatting, walking, standing, climbing, breathing, and performing certain manual tasks.

18

b. In addition, at all times relevant to this Complaint, Ms. Lyster had a record of impairments, including orthostatic hypotension and dislocation of joints, of which Defendant was on notice.

c. Finally, Defendant regarded Ms. Lyster as having qualifying impairments.

110. Defendant was on notice of Ms. Lyster's disability and need for accommodation because of her requests for reasonable accommodation.

111. With reasonable accommodations, Ms. Lyster could have performed the essential functions of her job.

112. Defendant violated the ADA by failing to promptly grant Ms. Lyster effective reasonable accommodations so she could perform the essential functions of her job, even though accommodations existed that would not have imposed a significant difficulty or expense on its operations, in violation of 42 U.S.C. §§ 12112(a) and 12112(b)(5)(A).

113. Defendant further violated the ADA by arbitrarily demanding that Ms. Lyster provide repeat medical documentation to substantiate the same permanent disability for which she had already provided extensive medical documentation. These repetitive, redundant requests were prohibited medical inquiries unrelated to Ms. Lyster's performance of her job and inconsistent with business necessity, in violation of 42 U.S.C. §§ 12112(a) and 12112(d)(4)(A).

114. Finally. Defendant treated Ms. Lyster less well than other employees because of her disability status, including by subjecting her to a hostile work environment as described in the factual allegations of this Complaint. Thus, Defendant discriminated against Ms. Lyster for her disability with respect to her terms, conditions, and privileges of employment in violation of 42 U.S.C § 12112(a).

115. Ms. Lyster has been, and continues to be, injured as a result of Defendant's unlawful acts, including by the loss of past wages and benefits, unnecessary medical expenses, past and present physical and emotional distress, and the attorneys' fees and costs of bringing this action.

## SECOND CAUSE OF ACTION

**Unlawful Retaliation in Violation of the Americans with Disabilities Act of 1990, as Amended, 42 U.S.C. § 12203(a)**
**(On behalf of Plaintiff)**

116. Ms. Lyster incorporates by reference the allegations set forth throughout this Complaint.

117. Amazon is an employer under the definition set forth in 42 U.S.C § 12111(5)(A).

118. Ms. Lyster is a qualified individual under the definition of 42 U.S.C § 12111(8).

119. On multiple occasions, Ms. Lyster engaged in protected activity by requesting reasonable accommodations from Amazon for her disability.

120. After Ms. Lyster applied and was approved for reasonable accommodations, Amazon subjected her to a hostile work environment as described in the factual allegations of this Complaint. Thus, Defendant violated the ADA by retaliating against Ms. Lyster for exercising her rights to request and use reasonable accommodation, in violation of 42 U.S.C. § 12203(a).

121. Ms. Lyster suffered, and continues to suffer, injuries as a direct and proximate result of Defendant's retaliatory acts, including loss of income, emotional distress, and humiliation.

## THIRD CAUSE OF ACTION

**Disability Discrimination in Violation of the New York State Human Rights Law, New York Exec. Law § 296 *et seq.***
**(On behalf of Plaintiff)**

122. Ms. Lyster incorporates by reference the allegations set forth throughout this Complaint.

123. Amazon is an employer under New York Exec. Law § 292(5).

124. Ms. Lyster is a person with a disability under New York Exec. Law § 292(1) and § 292(21).

125. Ms. Lyster was qualified for her job at Amazon, as evidenced by her ongoing tenure and successful performance.

126. Amazon was on notice of Ms. Lyster's disability because of her requests for reasonable accommodation.

127. Defendant took adverse action against Ms. Lyster by treating her less well than other employees because of her disability status, including by subjecting her to a hostile work environment as described in the factual allegations of this Complaint.

128. These adverse actions give rise to an inference of discrimination because the comments from Amazon managers toward Ms. Lyster were explicitly hostile to her accommodation needs and derogatory with respect to her disability.

129. Thus, Defendant discriminated against Ms. Lyster for her disability with respect to her terms, conditions, and privileges of employment, in violation of New York Exec. Law § 296(1)(a).

130. Amazon had work available that would have accommodated Ms. Lyster's needs and preserved her ability to perform the essential functions of her job.

131. Amazon placed Ms. Lyster on extended, unwanted leaves of absence instead of providing effective reasonable accommodations; subjected Ms. Lyster to automated systems that violated her confirmed accommodation needs; and arbitrarily rescinded approved accommodations for a permanent condition while requesting repetitive and unnecessary medical documentation.

132. Defendant thus violated the NYSHRL by refusing to provide Plaintiff, an otherwise qualified individual with a disability, with reasonable accommodations, even though that accommodation would not have imposed a significant difficulty or expense on its operations, in violation of New York Exec. Law § 296(3)(a).

133. Ms. Lyster suffered, and continues to suffer, injuries as a direct and proximate result of Defendant's retaliatory acts, including loss of income, emotional distress, and humiliation.

## FOURTH CAUSE OF ACTION

### Disability Discrimination
### in Violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112
### (On behalf of Plaintiff and the Fed. R. Civ. P. 23 (b)(2) Class)

134. Ms. Lyster and the Proposed Class incorporate by reference the allegations set forth throughout this Complaint.

135. Amazon is an employer under the definition set forth in 42 U.S.C § 12111(5)(A).

136. The Proposed Class consists of employees with disabilities who are or were qualified for their jobs at Amazon under 42 U.S.C § 12111(8).

137. Amazon knows that it has employees in New York who require reasonable accommodations for disability-related limitations as evidenced by Amazon's policies regarding reasonable accommodations and, upon information and belief, by the many employees who have requested and used reasonable accommodations for disability-related needs while working for Amazon in New York.

138. Amazon's policy of deducting UPT from employees in the Proposed Class while they awaited approval of their accommodations systematically penalized them because they requested accommodation, instead of providing them with reasonable accommodation.

139. Thus, Defendant violated the ADA by failing to grant the Proposed Class effective reasonable accommodations, even though accommodations existed that would not have imposed a significant difficulty or expense on its operations, in violation of 42 U.S.C. §§ 12112(a) and 12112(b)(5)(A).

140. Defendant also treated members of the Proposed Class less well than other employees because of their disability status by subjecting employees with disabilities to a policy that penalizes them for requesting reasonable accommodation.

141. Thus, Defendant discriminated against the Proposed Class for their disabilities with respect to their terms, conditions, and privileges of employment in violation of 42 U.S.C § 12112(a).

## FIFTH CAUSE OF ACTION

**Disability Discrimination in Violation of the New York State Human Rights Law, New York Exec. Law § 296 *et seq.*
(On behalf of Plaintiff and the Fed. R. Civ. P. 23 (b)(2) Class)**

142. Ms. Lyster and the Proposed Class incorporate by reference the allegations set forth throughout this Complaint.

143. Amazon is an employer under New York Exec. Law § 292(5).

144. The members of the Proposed Class are persons with disabilities within the meaning of New York Exec. Law §§ 292(1) and 292(21) who are or were qualified for their jobs with Amazon.

145. Amazon knows that it has employees in New York who require reasonable accommodations for disability-related limitations as evidenced by Amazon's policies regarding reasonable accommodations and, upon information and belief, by the many employees who have requested and used reasonable accommodations for disability-related needs while working for Amazon in New York.

146. Amazon's policy of deducting UPT while employees are awaiting approval of their accommodations systematically penalizes them because they have requested accommodation, instead of providing them with reasonable accommodation.

147. Defendant thus violated the NYSHRL by refusing to provide the Proposed Class, otherwise qualified individuals with disabilities, with reasonable accommodations, even though that accommodation would not have imposed a significant difficulty or expense on its operations, in violation of New York Exec. Law § 296(3)(a).

148.  Defendant also treated members of the Proposed Class less well than other employees because of their disability status by subjecting employees with disabilities to a policy that penalizes them for requesting reasonable accommodation.

149.  Thus, Defendant discriminated against the Proposed Class for their disabilities with respect to their terms, conditions, and privileges of employment, in violation of New York Exec. Law § 296(1)(a).

## SIXTH CAUSE OF ACTION

**Unlawful Retaliation in Violation of the Americans with Disabilities Act of 1990, as Amended, 42 U.S.C. § 12203(a)**
**(On behalf of Plaintiff and the Fed. R. Civ. P. 23 (b)(2) Class)**

150.  Ms. Lyster and the Proposed Class incorporate by reference the allegations set forth throughout this Complaint.

151.  An employer retaliates in violation of the federal anti-discrimination laws when it engages in an action that would have "dissuaded a reasonable worker from" exercising their rights under the law because the worker did, in fact, exercise those rights. *Burlington N. and Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405, 2415 (2006). The EEOC's enforcement guidance on retaliation further clarifies that unlawful retaliation is any act that is "reasonably likely to deter protected activity." U.S. EQUAL EMP. OPPORTUNITY COMM'N, EEOC-NVTA-2016-5, QUESTIONS AND ANSWERS: ENFORCEMENT GUIDANCE ON RETALIATION AND RELATED ISSUES (2016).

152.  Amazon is an employer under the definition set forth in 42 U.S.C § 12111(5)(A).

153.  Amazon knows that it has employees in New York who require reasonable accommodations for disability-related limitations as evidenced by Amazon's policies regarding reasonable accommodations and, upon information and belief, by the many employees who have

requested and used reasonable accommodations for disability-related needs while working for Amazon in New York.

154. Plaintiff and other employees within the Proposed Class engaged in acts protected by the ADA when they requested reasonable accommodation.

155. Amazon maintains a practice of deducting UPT while requiring employees to stay out of work while waiting for approval of their reasonable accommodation requests. Those UPT deductions lead to threatening disciplinary communications from Amazon in which employees are informed: "We will review your employment status with Amazon if we do not hear from you in 48 hours."

156. Plaintiff and, upon information and belief, other employees with disabilities who receive these communications, credibly believe that they can and do lead to termination.

157. As a result, Plaintiff and other class members reasonably believe they are risking discipline and termination each time they request reasonable accommodation.

158. Thus, Amazon's policy violates 42 U.S.C. § 12203(b) as to Plaintiff and the members of the Proposed Class who were deducted UPT while on leaving pending reasonable accommodation.

## SEVENTH CAUSE OF ACTION

**Unlawful Interference in Violation of the Americans with Disabilities Act of 1990, as Amended, 42 U.S.C. § 12203(b)**
**(On behalf of Plaintiff and the Fed. R. Civ. P. 23 (b)(2) Class)**

159. Ms. Lyster and the Proposed Class incorporate by reference the allegations set forth throughout this Complaint.

160. Amazon is an employer under the definition set forth in 42 U.S.C § 12111(5)(A).

161. The ADA makes it unlawful to "coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed . . . any right granted or protected by this chapter." 42 U.S.C. § 12203(b).

162. Plaintiff and other members of the Proposed Class at times need reasonable accommodations to perform the essential functions of their jobs at Amazon.

163. In response to Ms. Lyster's requests for accommodation, Amazon repeatedly obligated her to remain out of work and then subjected her to its policy of deducting UPT while employees are out of work awaiting accommodation, ultimately threatening her with discipline and termination of her employment.

164. Amazon's treatment of Ms. Lyster is consistent with its treatment of all members of the Proposed Class pursuant to its policy of deducting UPT from employees who are out of work while awaiting accommodation, putting them at risk of automatic discipline and job termination.

165. Amazon also maintains a policy of sending threatening, disciplinary emails to employees who reach negative UPT while they are on the above unwanted waiting periods. The emails, demanding that employees justify their absences within 48 hours or face termination, serve to intimidate and threaten employees who have exercised their rights to request reasonable accommodation.

166. As a result of these policies, Ms. Lyster and other members of the Proposed Class are intimidated and interfered with in their exercise of their right to reasonable accommodation under the ADA.

167. Thus, Amazon's policy violates 42 U.S.C. § 12203(b) as to Plaintiff and the entire Proposed Class.

## EIGHTH CAUSE OF ACTION

### Unlawful Retaliation in Violation of the New York Lawful Absence Law, N.Y.L.L. § 215 1(a)

26

**(On behalf of Plaintiff and the Fed. R. Civ. P. 23 (b)(2) Class)**

168. Ms. Lyster and the Proposed Class incorporate by reference the allegations set forth throughout this Complaint.

169. Amazon is an employer under the definition set forth in N.Y.L.L. § 2(6).

170. The NYLL makes it unlawful to "discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee . . . because such employee has used any legally protected absence pursuant to federal, local, or state law." N.Y.L.L. § 215(1)(a)(viii).

171. The NYLL's provision against retaliation or penalization for legally protected absences specifies clearly that such unlawful penalties include "assessing any demerit, occurrence, any other point, or *deductions from an allotted bank of time*, which subjects or could subject an employee to disciplinary action." N.Y.L.L. § 215(1)(a) (emphasis added).

172. Amazon obligated Ms. Lyster and other members of the Proposed Class to remain out of work unpaid while waiting for accommodation. These waiting periods pending accommodation were protected under the ADA and NYSHRL because they arose from Plaintiff's and others' requests for reasonable accommodation.

173. During these legally protected waiting periods, Amazon deducted UPT from their balances and threatened them with discipline and termination per its attendance policy.

174. Thus, Defendant retaliated and continues to retaliate against Plaintiff and against all members of Proposed Class whose UPT was or is deducted while they were out of work with pending accommodation requests, in violation of N.Y.L.L. § 215 1(a).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment:

a) Declaring that the acts, practices, and omissions complained of herein violate the ADA, NYSHRL, and NYLL;

b) Enjoining Defendant from further discriminatory actions in violation of the ADA, NYSHRL, and NYLL, including by affirmatively ordering Defendant to modify its employment policies and practices to comply with the ADA, NYSHRL, and NYLL;

c) Re-processing all terminations of employment of Class Members since November 12, 2022 that were based on allegedly exceeding UPT allowances, under revised, lawful policies and procedures;

d) Providing compensation to Ms. Lyster individually for physical and mental injuries sustained because of Amazon's discriminatory and retaliatory conduct toward Ms. Lyster specifically, including compensation for loss of income and benefits, mental anguish, emotional distress, and humiliation;

e) Directing Defendant to pay the Plaintiff actual damages, including back pay, front pay, and compensation for past and future lost benefits; actual, compensatory and punitive damages; payment for her work as a class representative, and pre-judgment interest;

f) Providing pre- and post-judgment interest, as provided by law, as well as damages to offset any tax consequences to Ms. Lyster and to the Proposed Class;

g) Awarding the Plaintiff reasonable attorneys' fees, costs, and expenses; and

h) Awarding such other relief as the Court deems just and proper.


## JURY DEMAND

Plaintiff, on behalf of herself and the Proposed Class, hereby demand a trial by jury on all issues of fact and damages stated herein.


Dated:        November 12, 2025

              New York, NY

Respectfully submitted,

Katherine Greenberg
Shyamala Ramakrishna *(pending admission)*
A BETTER BALANCE
500 7th Avenue, 8th Floor
New York, NY 10018
Telephone: (212)-430-5982
Email: kgreenberg@abetterbalance.org
Email: sramakrishna@abetterbalance.org


 /s/ Maia Goodell

Maia Goodell
VLADECK, RASKIN & CLARK, P.C.
111 Broadway, Suite 1505
New York, NY 10006
Telephone: (212) 403-7300
Email: mgoodell@vladeck.com

*Attorneys for Plaintiff and the*
*Proposed Class*