**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

CAYLA LYSTER, *on behalf of herself and all persons similarly situated*,

Plaintiffs,

- vs -

AMAZON.COM SERVICES, LLC,

Defendant.

**Case No. 1:25-cv-09423-VEC**

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

Dated: January 16, 2026

**MORGAN, LEWIS & BOCKIUS LLP**
Michael Burkhardt
2222 Market Street
Philadelphia, PA 19103
Tel: (215) 963-5130
michael.burkhardt@morganlewis.com

Brian D. Berry (*pro hac vice forthcoming*)
One Market, Spear Street Tower
San Francisco, CA 94105
Tel: (415) 442-1000
brian.berry@morganlewis.com

*Attorneys for Defendant Amazon.com Services, LLC*

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. THE COMPLAINT'S MATERIAL ALLEGATIONS ..... 3

A. Amazon's Unpaid Time Policy. ..... 3

B. Plaintiff's Requests for Accommodation in November 2023 and June 2024. ..... 4

C. The Complaint's Causes of Action. ..... 6

III. LEGAL STANDARD ..... 7

IV. ARGUMENT ..... 9

A. Plaintiff Lacks Standing to Pursue Injunctive Relief Individually or on Behalf of the Putative Class. ..... 9

B. Plaintiff's Individual and Class UPT-Based Claims (Fourth Through Eighth Causes of Action) Are Implausible. ..... 13

C. Plaintiff's Manager-Specific Factual Allegations Demonstrate She is Not Asserting Common Claims and Cannot Satisfy the Requirements of Rule 23(a) or 23(b)(2). ..... 15

D. Purporting to Challenge the UPT Policy Does Not Save Plaintiff's Class Claims. ..... 17

V. CONCLUSION ..... 21

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................7, 10

*Barabin v. Aramark Corp.*,
210 F.R.D. 152 (E.D. Pa. 2002), *aff'd*, 2003 WL 355417
(3d Cir. Jan. 24, 2003) ....................8

*Barrus v. Dick's Sporting Goods, Inc.*,
732 F. Supp. 2d 243 (W.D.N.Y. 2010)....................8

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)....................7

*Bell v. Lockheed Martin Corp.*,
2011 WL 6256978 (D.N.J. Dec. 14, 2011)....................8

*Borgese v. Baby Brezza Enterprises LLC*,
2021 WL 634722 (S.D.N.Y. Feb. 18, 2021)....................8

*Brizzi v. Utica Mut. Ins. Co.*,
529 F. Supp. 3d 44 (E.D.N.Y. 2021) ....................17

*Brown v. City of Tucson*,
336 F.3d 1181 (9th Cir. 2003) ....................14

*Buonasera v. Honest Company, Inc.*,
208 F. Supp. 3d 555 (S.D.N.Y. 2016)....................10

*Burlington N. and Santa Fe Ry. Co. v. White*,
126 S. Ct. 2405 (2006)....................13

*Cagle v. Weill Cornell Med.*,
680 F. Supp. 3d 428 (S.D.N.Y. 2023)....................17

*Calcano v. Swarovski N. Am.Ltd.*,
36 F.4th 68 (2d Cir. 2022) ....................10

*Clapper v. Amnesty Int'l, USA*,
568 U.S. 398 (2013)....................10

*Blatch ex rel. Clay v. Hernandez*,
360 F. Supp. 2d 595 (S.D.N.Y. 2005)....................19

*Ellersick v. Monro Muffler Brake, Inc.*,
2017 WL 1196474 (W.D.N.Y. Mar. 31, 2017)....17

*Frakes v. Peoria Sch. Dist. No. 150*,
872 F.3d 545 (7th Cir. 2017)....14

*Gen. Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982)....8

*Gronne v. Apple Bank For Sav.*,
1 F. App'x 64 (2d Cir. 2001)....18

*Heggs v. City of New York*,
2023 WL 9786044 (E.D.N.Y. Aug. 24, 2023)....9, 10, 19

*Hightower v. Wells Fargo Bank, N.A.*,
2018 WL 1518616 (E.D. Pa. Mar. 18, 2018)....8

*Hohider v. UPS*,
574 F.3d 169 (3d Cir. 2009)....2, 18, 19

*Izquierdo v. Panera Bread Co.*,
450 F. Supp. 3d 453 (S.D.N.Y. 2020)....9

*Kelly v. Graphic Packaging Int'l, LLC*,
2025 WL 573766 (6th Cir. Feb. 21, 2025), *cert. denied*, 2025 WL 2824144 (U.S. Oct. 6, 2025)....14

*Kelly v. Town of Abingdon*,
90 F.4th 158 (4th Cir. 2024)....14

*Kent-Chojnicki v. Runyon*,
180 F.R.D. 237 (W.D.N.Y. 1998)....2, 19

*Maddison v. Comfort Sys. USA (Syracuse), Inc.*,
2018 WL 679477 (N.D.N.Y. Feb. 1, 2018)....8

*McSweeney v. Cohen*,
776 F. Supp. 3d 200 (S.D.N.Y. 2025)....13

*Natofsky v. City of New York*,
921 F.3d 337 (2d Cir. 2019)....13

*Pinckney v. Carroll*,
2019 WL 6619484 (S.D.N.Y. Dec. 4, 2019) (J. Caproni).... *passim*

*Ramirez v. City of New York*,
2025 WL 896498 (S.D.N.Y. Mar. 24, 2025)....14

*Schroedel v. New York University Medical Center*,
885 F. Supp. 594 (S.D.N.Y. 1995) ....................9

*Semenko v. Wendy's Int'l, Inc.*,
2013 WL 1568407 (W.D. Pa. Apr. 12, 2013)....................9, 19

*Slater v. NYU Langone Health Sys.*,
2025 WL 2208292 (E.D.N.Y. Aug. 4, 2025)....................13

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2024)....................9

*Sutton v. United Air Lines, Inc.*,
527 U.S. 471, 119 S. Ct. 2139 (1999)....................18

*Wal-Mart, Inc. v. Dukes*,
564 U.S. 338 (2011)....................16, 17, 18

*Won v. Amazon.com Services LLC*,
2025 WL 2476392 (E.D.N.Y. Aug. 28, 2025)....................17

**Other Authorities**

Rule 23 .................... *passim*

U.S. Const. art. III § 2....................9

# I. INTRODUCTION

Cayla Lyster, the sole named Plaintiff in this action, is a current employee of Defendant Amazon.com Services, LLC ("Amazon") who asserts claims for disability discrimination, retaliation, and interference based on highly individualized allegations of mistreatment by a few local managers that occurred for about a year after she first requested an accommodation in November 2023. On the face of the Complaint, Amazon granted Plaintiff's accommodations during that time period, she continues to work successfully in her full-time role, and she has experienced no allegedly discriminatory conduct since October of 2024.

Despite her highly individualized allegations, Plaintiff purports to represent a broad class of current and former employees seeking various forms of injunctive relief and purporting to challenge Amazon's neutral Unpaid Time Off ("UPT") policy. For multiple reasons, Plaintiff has not alleged plausible claims for injunctive relief, UPT-based injury, or class treatment.

First, Plaintiff lacks standing to pursue injunctive relief individually or on behalf of a putative class. A plaintiff has standing to pursue injunctive relief only when faced with an imminent and substantial risk of future injury. Neither past harm nor fear of possible future injury confers standing to pursue injunctive relief. Here, Plaintiff clearly alleges that Amazon has accommodated her alleged disability and that she continues to perform her job well. Although Plaintiff alleges Amazon delayed processing her accommodation requests in 2023 and 2024, which caused her to miss some work while awaiting Amazon's accommodations, and alleges specific managers harassed her for seeking accommodations, all of those allegations are based on past conduct. She alleges no discriminatory conduct after October 2024.

Second, Plaintiff's individual and class claims for UPT-based discrimination, retaliation, and interference also fail as a matter of law because they require Plaintiff to establish causation, which she cannot do. Plaintiff concedes the UPT policy and the alleged "threatening" emails about

the policy applied to her because she was absent from work, not because she had a disability or requested an accommodation. Indeed, she cannot allege causation because she concedes the policy pre-dates her tenure at Amazon, the policy applies equally to all employees regardless of disability status, and the emails about the policy are automatically sent to all employees who are absent from work with a negative UPT balance regardless of disability status. The Complaint contains no factual allegations plausibly suggesting discriminatory animus motivated Amazon's implementation or administration of the UPT policy in any way.

Third, given Plaintiff's highly individualized factual allegations, it is clear she is not in fact asserting common claims under Rule 23(a) or challenging conduct susceptible to class treatment under 23(b)(2). Plaintiff purports to represent all employees at Amazon logistics facilities in New York who "sought or intended to seek a disability accommodation"—including employees with any type of disability or no disability at all, employees who did or did not seek an accommodation, and employees who may or may not have been affected by the UPT policy. Not only is the purported class facially overbroad as a matter of commonsense because it includes a large number of employees who could not have been injured, but the Complaint also shows Plaintiff predicates her claims on her unique circumstances and the conduct of specific managers in her facility. All of Plaintiff's specific factual allegations demonstrate the individualized nature of her claim and why she cannot satisfy the Rule 23 requirements. Attempting to reframe these individualized claims as a challenge to Amazon's UPT policy does not cure the problem because a plaintiff cannot meet the commonality requirements of Rule 23(a) or 23(b)(2) where the class claims turn on individualized disability determinations like those at issue here. *Hohider v. UPS*, 574 F.3d 169, 196 (3d Cir. 2009); *Kent-Chojnicki v. Runyon*, 180 F.R.D. 237, 243 (W.D.N.Y. 1998). Such claims are not susceptible to common proof.

The Court should dismiss Plaintiff's claims for injunctive relief and her individual and class claims for UPT-based discrimination, retaliation, and interference alleged as the Fourth through Eighth Causes of Action.

## II. THE COMPLAINT'S MATERIAL ALLEGATIONS[1]

Plaintiff is a current Amazon employee who alleges disability discrimination, retaliation and interference and purports to assert class claims for injunctive relief. After Plaintiff began her career at Amazon in 2022, she worked for nearly a year without any accommodation and performed her duties well despite a disability that pre-dates her tenure with Amazon. Compl. ¶¶ 22, 42-43, 47. When Plaintiff did seek an accommodation in 2023, she alleges specific managers caused her to miss some work time, delayed her accommodation determinations, and/or harassed her for seeking an accommodation. *Id*. ¶¶ 63, 67-68, 74, 86, 90-95. Despite those allegations, Plaintiff received and continues to receive accommodations that allow her to perform the functions of her job. *Id*. ¶¶ 42-43, 57, 77, 96. Plaintiff continues to work successfully at Amazon. In fact, she alleges she is one of the top three performers in her manager's cohort. *Id*. ¶¶ 42-43, 96.

### A. <u>Amazon's Unpaid Time Policy.</u>

Amazon maintains an absence control system under its Unpaid Time Policy ("UPT"). *Id.* ¶ 28. Employees maintain a bank of UPT hours that reduces when they have unexcused absences from work. *Id.* According to Plaintiff, when an employee's UPT balance turns negative, Amazon's system automatically sends notice that "if they cannot satisfactorily explain their absences within 48 hours, Amazon will take action pursuant to its disciplinary policy, up to and including termination." *Id.* ¶ 29. Employees have access to the UPT policy and other Amazon

[1] Defendant accepts as true the facts as they appear in the Complaint for the purposes of this motion only and otherwise vigorously denies Plaintiff's recitation of the facts as inaccurate, misleading, or otherwise misconstrued.

policies via the internal "A to Z" app. *Id.* ¶ 30. The UPT policy explains, "[Amazon] 'does not deduct UPT when absences are covered by paid time off, one of [its] leave of absence (LOA) policies, Accommodations Policy, or applicable law.'" *Id.* (quoting policy). Plaintiff alleges Amazon's system deducts UPT time when Amazon has not yet excused an employee's absence, *id.* ¶ 33, and it notifies employees when their UPT balance turns negative and asks for a response to prevent possible discipline. *Id.* ¶ 38. Under the UPT policy, Amazon refunds UPT deductions upon approval of an accommodation or if the absence is covered by other leave policies. *Id.* ¶¶ 30, 35.

### B. <u>Plaintiff's Requests for Accommodation in November 2023 and June 2024.</u>

Plaintiff is an employee at an Amazon logistics facility in Liverpool, New York and has a permanent connective-tissue disorder. Compl. ¶¶ 5, 22. She worked for about 10 months without the need for any accommodation, but in November 2023, she sought an accommodation related to adjusted duties as a product "picker." *Id.* ¶¶ 48-52. In response to Plaintiff's request, Amazon relieved her from work while evaluating the request and provided notice that her absence could be subject to the UPT policy. *Id.* ¶¶ 53, 55. As noted above, under the UPT policy, Amazon refunds UPT deductions upon approval of an accommodation request. *Id.* ¶ 35. However, Plaintiff alleges she reported to the facility during this period and received no UPT deductions. *Id.* ¶¶ 35, 55. Amazon accommodated Plaintiff with "Modified Pick" duties and brought her back to work on December 12, 2023. *Id.* ¶ 57. According to Plaintiff, two managers (Bridget and Charlie D.) subjected her to a hostile work environment upon her return to work by questioning her disability-related work limitations. *Id.* ¶¶ 89-91.

In June 2024, an HR manager notified Plaintiff that she needed to submit new medical documentation in connection with Amazon's review of her accommodation. *Id.* ¶ 59. According to Plaintiff, Amazon requested additional medical documentation—not because it was required

under Amazon's policy, but because her site-level manager (Charlie D.) complained about her accommodation and harbored disability-related animus toward her. *Id.* ¶ 63. After she submitted the new documentation, Amazon reassigned her to a new "PP Mix" position with essential functions that Amazon allegedly knew she could not perform and notified her that it would place her on leave of absence if she could not work in the new position. *Id.* ¶¶ 65, 66. In response, Plaintiff requested an accommodation, and the operations manager responsible for approving accommodations (Charles J.) allegedly made a comment that Plaintiff regarded as derogating her various accommodation requests. *Id.* ¶ 67-68. Throughout the month, on some days her manager (Charlie D.) assigned her to perform work that suited her accommodation request and relieved her from work on other days. *Id.* ¶ 69.

According to Plaintiff, on June 24, 2024, she submitted medical documentation explaining the PP Mix duties did meet her accommodation needs. *Id.* ¶ 70. She alleges Amazon then placed her on unpaid leave until August 15, 2024, when it brought her back to work with revised duties in "SmartPack." *Id.* ¶¶ 72, 77. She alleges Charlie D. caused this extended absence by his delinquency in processing her request. *Id.* ¶¶ 74, 77. She also alleges Amazon deducted UPT time from her balance and sent her automated emails about her UPT balance. *Id.* ¶ 75. Plaintiff claims she regarded these emails as threatening her employment, *id.* ¶ 75, even though Amazon's policy refunds UPT deductions upon approval of an accommodation request and even though she received no discipline. *Id.* ¶ 35. Importantly, despite her conclusory and disparaging assertions about Amazon's UPT policy, Plaintiff does not allege Amazon failed to refund her UPT time after granting her accommodation.

Plaintiff alleges accommodation problems continued upon her return to work on August 15, including when Amazon's system did not reflect her approval to work Modified Pack duties

because Charles J. "[could]n't be bothered" to input her accommodation information into the system. *Id.* ¶¶ 80-86. During that same time, Plaintiff alleges Charlie D. continued to subject her to a hostile work environment by questioning her disability-related limitations and removing her from SmartPack duties. *Id.* ¶¶ 92-95.

### C. **<u>The Complaint's Causes of Action.</u>**

Plaintiff asserts eight causes of action. She asserts her First through Third Causes of Action in her individual capacity for disability discrimination under the ADA and New York state law and for retaliation under the ADA.[2] She pursues those three causes of action under theories of failure to accommodate and hostile work environment, and she seeks damages. *Id.* ¶¶ 112-14, 120, 127-28.

Plaintiff asserts her Fourth through Eighth Causes of Action in her individual capacity and on behalf of a putative class that includes "[a]ll persons employed by Amazon in its logistics facilities in New York State as hourly workers from November 12, 2022 up to and including the date of any judgment in this case who sought or intended to seek a disability accommodation from Amazon." *Id.* ¶ 98. Those five causes of action assert UPT-based claims for disability discrimination under the ADA and state law, retaliation under the ADA and state law, and interference under the ADA, based on her contention that "Amazon's policy of deducting UPT while employees are awaiting approval of their accommodations systemically penalized them because they requested accommodation, instead of providing them with a reasonable

[2] Discrimination in violation of the Americans with Disability Act ("ADA") (First Cause of Action), Compl. ¶¶ 106-115; retaliation in violation of the ADA (Second Cause of Action), *id.* ¶¶ 116-121; and disability discrimination in violation of the New York State Human Rights Law ("NYSHRL") (Third Cause of Action), *id.* ¶¶ 122-133.

accommodation." *Id.* ¶¶ 138, 146; *see also id.*, ¶¶ 155, 164, and 173.[3] She seeks injunctive relief for these putative class claims.

## III. LEGAL STANDARD

To survive a motion to dismiss, a plaintiff must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[4] Plausibility "asks for more than a sheer possibility that a defendant has acted unlawfully" or "facts that are 'merely consistent with' a defendant's liability." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556-57). To avoid dismissal a complaint must contain more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555-557. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

In a putative class action, a plaintiff must also allege facts sufficient to plausibly satisfy the class action requirements under FRCP Rule 23(a) and (b). Rule 23(a) contains four requirements—numerosity, commonality, typicality and adequacy. Fed. R. Civ. P. 23(a). In addition to plausibly pleading each element of Rule 23(a), a plaintiff must satisfy one of Rule 23(b)'s three prongs. Here, Plaintiff asserts her proposed class satisfies Rule 23(b)(2), Compl. ¶ 98, which demands proof that the defendant "acted or refused to act on grounds that apply

---

[3] Disability discrimination in violation of the ADA (Fourth Cause of Action), Compl. ¶¶ 134-141; disability discrimination in violation of the NYSHRL (Fifth Cause of Action), *id.* ¶¶ 142-149; retaliation in violation of the ADA (Sixth Cause of Action), *id.* ¶¶ 150-158; interference in violation of the ADA (Seventh Cause of Action), *id.* ¶¶ 159-167; and retaliation in violation of the New York Lawful Absence Law ("NYLL") (Eighth Cause of Action), *id.* ¶¶ 168-174.

[4] [Where] allegations in the complaint, however true, could not raise a claim or entitlement to relief, 'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558.

generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed R. Civ. P. 23(b)(2).

The Supreme Court has recognized that a court may determine at the pleading stage whether a plaintiff can satisfy Rule 23's class certification requirements. *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982); *Barrus v. Dick's Sporting Goods, Inc.*, 732 F. Supp. 2d 243, 248-49 (W.D.N.Y. 2010) (the plaintiff must demonstrate "that Rule 23's requirements are satisfied" by "more than a simple reiteration of those requirements in conclusory allegations") (internal citations omitted). Dismissing class claims is appropriate where "the complaint itself demonstrates that the requirements for maintaining a class action cannot be met."[5] *Borgese v. Baby Brezza Enterprises LLC*, 2021 WL 634722, at *6 (S.D.N.Y. Feb. 18, 2021) ("[o]n the bare and conclusory allegations in [the] [c]omplaint, the court concludes that [plaintiff] has failed to allege a plausible entitlement to class treatment."); *see also Maddison v. Comfort Sys. USA (Syracuse), Inc.*, 2018 WL 679477, at *7 (N.D.N.Y. Feb. 1, 2018) (striking class claims where it "would be impossible to certify the alleged class regardless of the facts [the] [p]laintiffs may be able to obtain during discovery."); *Barabin v. Aramark Corp.*, 210 F.R.D. 152, 162 (E.D. Pa. 2002), *aff'd*, 2003 WL 355417 (3d Cir. Jan. 24, 2003) (affirming decision to strike class allegations where it was evident from the complaint that plaintiff could not satisfy Rule 23); *Bell v. Lockheed Martin Corp.*, 2011 WL 6256978, at *9 (D.N.J. Dec. 14, 2011) (denying certification before conclusion of discovery because the complaint's allegations could not support a viable class); *Hightower v. Wells Fargo Bank, N.A.*, 2018 WL 1518616, at *7 (E.D. Pa. Mar. 18, 2018) (striking

[5] Rule 23(d) also provides the Court with the means to strike the class allegations now and prevent wasteful discovery. Fed. R. Civ. P. 23(d)(1)(D) ("In conducting an action under this rule, the court may issue orders that require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly.").

class claims because the complaint made clear that they could not meet the requirements for class certification); *Semenko v. Wendy's Int'l, Inc.*, 2013 WL 1568407, at *11 (W.D. Pa. Apr. 12, 2013) (striking class allegations in the pleadings "[where] no amount of discovery will demonstrate that the class can be maintained").

## IV. ARGUMENT

### A. Plaintiff Lacks Standing to Pursue Injunctive Relief Individually or on Behalf of the Putative Class.

Article III of the Constitution restricts federal court jurisdiction to "cases" and "controversies." U.S. Const. art. III § 2; *Summers v. Earth Island Inst.*, 555 U.S. 488, 492-93 (2024). "To ensure the presence of a case or controversy, the Court must make a threshold determination of whether the plaintiff has standing to sue." *Pinckney v. Carroll*, 2019 WL 6619484, at *3 (S.D.N.Y. Dec. 4, 2019) (J. Caproni) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). And "a plaintiff must demonstrate standing separately for each form of relief sought." *Id.; Izquierdo v. Panera Bread Co.*, 450 F. Supp. 3d 453, 459 (S.D.N.Y. 2020) (granting defendant's motion to dismiss plaintiff's prayer for injunctive relief).

This Court has stated that "[t]o establish standing for an injunction, a plaintiff must show that there is a risk of continuing or future harm; past exposure to illegal conduct is insufficient to satisfy the injury-in-fact requirement. Moreover, the injury cannot be conjectural or hypothetical; the plaintiff must be immediately in danger of sustaining some direct injury as a result of defendants' conduct." *Pinckney*, 2019 WL 6619484, at *4; *see also, e.g.*, *Heggs v. City of New York*, 2023 WL 9786044, at *23 (E.D.N.Y. Aug. 24, 2023), *report and recommendation adopted*, 2024 WL 759439, at *8-9 (E.D.N.Y. Feb. 23, 2024) (finding plaintiff lacked standing to pursue injunctive relief in ADA claim where alleged future harm was not sufficiently imminent and substantial); *Schroedel v. New York University Medical Center*, 885 F. Supp. 594, 599-600

(S.D.N.Y. 1995) (holding a deaf plaintiff did not have standing to bring discrimination claims seeking injunctive relief due to failure to establish "real and immediate threat of repeated injury" in the future).[6] "[A]llegations of possible future injury are not sufficient," *Calcano v. Swarovski N. Am.Ltd.*, 36 F.4th 68, 74 (2d Cir. 2022), and even an "objectively reasonable likelihood" is not sufficient. *Clapper v. Amnesty Int'l, USA*, 568 U.S. 398, 410 (2013). Rather, the threatened injury must be "certainly impending." *Calcano,* 36 F.4th at 74.

In deciding a motion to dismiss for lack of standing to pursue an injunction, the court "need not credit a legal conclusion couched as a factual allegation or a naked assertion devoid of further factual enhancement[s]." *Calcano*, 36 F.4th at 75 (internal citations omitted); *Iqbal*, 556 U.S. at 678 ("conclusory statements, do not suffice."). A court must examine the factual context as set forth in the complaint to determine whether to credit a complaint's conclusions. *Id.* The key inquiry is not whether the Complaint pleads magic words of future harm, but whether, under the totality of the relevant alleged facts, it plausibly alleges "a real and immediate threat of future injury." *Calcano*, 36 F.4th at 75.

In *Pinckney,* this Court found that although the plaintiff sufficiently alleged standing to seek monetary damages, she failed to plausibly allege future harm and therefore dismissed plaintiff's claim for injunctive relief. 2019 WL 6619484 at *8. Like here, in *Pinckney,* the plaintiff asserted claims for violations of the ADA and NYSHRL, among other things, seeking monetary damages and declaratory and injunctive relief based in part on the defendants' alleged

[6] The fact that Plaintiff seeks to represent a class does nothing to change the standing requirement. *See Heggs*, 2023 WL 9786044, at *8 (denying motion for injunctive relief class certification because plaintiff failed to establish standing); *Buonasera v. Honest Company, Inc*., 208 F. Supp. 3d 555, 564-65 (S.D.N.Y. 2016) (denying plaintiff's claim for injunctive relief and class certification due to inability to demonstrate future injury).

discrimination and failure to accommodate the plaintiff and her family with regard to Section 8 housing needs. While the plaintiff was living with her mother, the defendants terminated her family's housing assistance benefits and initiated eviction proceedings. The plaintiff suffered from depression and bipolar disorder. The plaintiff filed suit and during the litigation the defendants reinstated the housing subsidy. Thereafter, the plaintiff amended her complaint to seek an injunction requiring the defendants "to adopt policies and institute training designed to ensure that [the defendant] provide reasonable accommodations to individuals with disabilities." *Id.*, at *2. The defendants moved to dismiss for lack of standing and failure to state a cause of action.

Based on allegations of past harm, this Court in *Pinckney* found the plaintiff had standing to pursue monetary damages for past alleged discrimination, but the plaintiff did not have standing to seek injunctive relief because she did not show a risk of continuing or future harm. The plaintiff argued that her disabilities placed "her at a heightened risk of termination" from the voucher program and reasoned that because of her disabilities "she will likely not only fail to meet [the defendants'] recertification deadlines but will also either fail to request an accommodation . . . or be wrongfully refused one." *Id.*, at *4. She claimed termination of her housing subsidy was "imminent and inevitable as to constitute an ongoing injury." The Court disagreed. Noting the state was not currently depriving plaintiff any benefit, this Court held that despite the plaintiff's worry and fear of another eviction proceeding, "at the present moment, there is no reason for the Court to assume that she will fail to request an accommodation if she needs one, or that [the defendants] will wrongfully deny her a reasonable accommodation." *Id.*, at *5. Thus, the plaintiff's potential harm was dependent on a "speculative chain of possibilities which [was] insufficient to confer standing." *Id.*

Here, the factual allegations and entire context of the Complaint demonstrate Plaintiff's claims are based on alleged past harm, not a risk of continuing or future harm. First, Plaintiff alleges that on two occasions (once in 2023 and once in 2024) she sought an accommodation for her alleged disability, and in both cases, Amazon ultimately accommodated her. *See* Compl. ¶¶ 52, 57, 70, 77. Second, although Plaintiff alleges certain managers took steps to interfere with her accommodation, all of those allegations relate to alleged conduct from November 2023 to October 2024. *Id*. ¶¶ 88-95. In fact, there are no factual allegations of any alleged harm after October 2024. *Id*. ¶ 95. Lastly, Plaintiff alleges she "continues to work successfully in her full-time role," that "[a]s recently as mid-2025, she ranks among the top three employees among her manager's cohort," that "[h]er performance rating…has never fallen below 'Great'," and that "[her] work has always met Amazon's quantitative productivity benchmarks." *Id*. ¶¶ 42-43, 96.

Although Plaintiff clearly states she is working successfully with the accommodation provided by Amazon, and she alleges no discriminatory conduct after October 2024, she seeks injunctive relief because she is "afraid of being subjected to the UPT policy again." *Id*. ¶¶ 95-96. Plaintiff is not alleging current or continuing harm. In fact, as demonstrated above, she has alleged just the opposite. Plaintiff does not allege that she will need another accommodation or that there will be a significant change in her current circumstances requiring a change in her accommodation. Any purported ongoing or future harm is nothing more than a speculative chain of possibilities: that Plaintiff is afraid of: (i) potentially needing another accommodation, (ii) potentially being off work while awaiting a decision on that accommodation, (iii) potentially being subjected to the alleged practice of having UPT deducted while awaiting a decision, (iv) potentially going into a negative UPT balance as result, and (v) potentially having some kind of negative experience related to that negative UPT balance. Just as in *Pinckney*, Plaintiff's fear of ongoing or future

harm "rests on a 'speculative chain of possibilities,'" which is insufficient to establish standing. *Pinckney*, 2019 WL 6619484, at *5. Therefore, this Court should dismiss Plaintiff's claims for injunctive relief.

### B. <u>Plaintiff's Individual and Class UPT-Based Claims (Fourth Through Eighth Causes of Action) Are Implausible</u>.

Plaintiff's individual and class UPT-based claims for discrimination, retaliation, and interference also fail as a matter of law. All of those claims require Plaintiff to establish a causal nexus sufficient to support an inference of disability discrimination, which she has not alleged and cannot allege. Her ADA discrimination and retaliation claims (Fourth and Sixth Causes of Action) require a showing of but-for causation. *Natofsky v. City of New York*, 921 F.3d 337, 349, 353 (2d Cir. 2019) (recognizing but-for causation standard under ADA and affirming summary judgment because employer demoted plaintiff because of his performance, not his hearing disability, and timing of plaintiff's internal complaint about manager did not support an inference that retaliatory intent motivated negative performance review).[7] Her state law discrimination and retaliation claims (Fifth and Eighth Causes of Action) require her to establish the "adverse action took place under circumstances giving rise to the inference of discrimination." *Slater v. NYU Langone Health Sys.*, 2025 WL 2208292, at *15 (E.D.N.Y. Aug. 4, 2025) (dismissing NYSHRL disability discrimination claim because plaintiff did not "plausibly plead[] that she received a lower evaluation score *because* of her disability.") (emphasis in original); *McSweeney v. Cohen*, 776 F. Supp. 3d 200, 274–75 (S.D.N.Y. 2025) (explaining NYLL retaliation claim requires "a connection

---

[7] In pleading her ADA retaliation claim, Plaintiff misstates the law. She asserts, "An employer retaliates in violation of the federal anti-discrimination laws when it engages in an action that would have 'dissuaded a reasonable worker from' exercising their rights under the law because the worker did, in fact, exercise those rights." Compl. ¶ 151 (citing *Burlington N. and Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405, 2415 (2006)). Her assertion simply omits the critical intent element of a retaliation claim. And *Burlington N.* addressed only the standard for what conduct may constitute an adverse employment action; the causation standard was not a question before the Court. *See id.*

between the protected activity and the adverse employment action."). And her ADA interference claim (Seventh Cause of Action) also requires a showing of intent. *Ramirez v. City of New York*, 2025 WL 896498, at *4 n.3 (S.D.N.Y. Mar. 24, 2025) (absent Second Circuit guidance on the elements of an ADA interference claim, applying "persuasive authority from other circuits" that "requires alleging an intent to discriminate, which is totally lacking from [plaintiff's] complaint") (citing *Kelly v. Town of Abingdon*, 90 F.4th 158, 171 (4th Cir. 2024); *Frakes v. Peoria Sch. Dist. No. 150*, 872 F.3d 545, 550-51 (7th Cir. 2017)).[8]

Plaintiff concedes the UPT policy applied to her because she was absent from work, not because she had a disability or requested an accommodation. Indeed, Amazon implemented the policy before Plaintiff was even an employee, Compl. ¶¶ 3, 5; the policy applies equally to all employees regardless of disability status, *id.* ¶¶ 3, 28-31; and the purportedly "threatening" emails about the policy are automatically sent to all employees who are absent from work regardless of disability status, *id.* ¶¶ 29, 34. There are no factual allegations in the Complaint that plausibly suggest Amazon implemented or administered the UPT policy with the intent to discriminate, retaliate or interfere with Plaintiff or any other employee seeking an accommodation for a disability. Importantly, Plaintiff does not assert a disparate impact claim challenging the neutral

[8] The Second Circuit has not addressed whether an ADA interference claim requires intent. The Fourth, Sixth, and Seventh Circuits have concluded ADA interference does require intent. *Frakes*, 872 F.3d at 550–51 (7th Cir. 2017) (taking guidance from the "identical" anti-interference provision of the Fair Housing Act and concluding "a plaintiff alleging an ADA interference claim must demonstrate that . . . the defendants were motivated by an intent to discriminate."); *Kelly v. Town of Abingdon, Virginia*, 90 F.4th 158, 172 (4th Cir. 2024) (adopting *Frakes*); *Kelly v. Graphic Packaging Int'l, LLC*, 2025 WL 573766, at *4 (6th Cir. Feb. 21, 2025) (same), *cert. denied*, 2025 WL 2824144 (U.S. Oct. 6, 2025). Like those Circuit Courts, the Ninth Circuit concluded based on the ADA's structure and history that the ADA's interference provision "ought to be guided" by the FHA, but the record on appeal did not require the Court to reach the elements of an interference claim. *Brown v. City of Tucson*, 336 F.3d 1181, 1191 (9th Cir. 2003). It appears no Circuit Court has concluded a *prima facie* ADA interference claim lacks an intent element.

UPT policy. As a result, Plaintiff's Fourth through Eighth Causes of Action are fatally flawed, and this Court should therefore dismiss them.

### C. Plaintiff's Manager-Specific Factual Allegations Demonstrate She is Not Asserting Common Claims and Cannot Satisfy the Requirements of Rule 23(a) or 23(b)(2).

Plaintiff's highly individualized factual allegations demonstrate that Plaintiff does not hold her claims in common with the proposed class. On the face of the Complaint, Plaintiff's claims are based on her unique circumstances and largely directed at the conduct of two specific managers in her facility. In fact, the Complaint devotes over 50 paragraphs to detailing Plaintiff's highly individualized experiences—focusing on the unique circumstances of her medical condition, her alleged need for job-specific and disability-specific accommodations (e.g., not using a step ladder, not using a grab tool, and working with access to a chair to relieve her from standing at times), Compl. ¶¶ 45, 52, and the specific actions of managers who allegedly interfered with her accommodation requests. *Id*. ¶¶ 41-96.

Plaintiff worked at Amazon for nearly a year without any accommodation and by her own assertion performed her duties well even though she alleges that she had a disability from the time she began working for Amazon. *Id*. ¶¶ 22, 42-43, 47. However, when Plaintiff did seek an accommodation, she alleges that specific managers caused her to miss some work time, delayed her accommodation determinations, and/or harassed her for seeking an accommodation. *See id*. ¶¶ 63, 67-68, 74, 86, 90-95. Despite those allegations, Plaintiff received and continues to receive accommodations that allow her to perform the functions of her job. *Id*. ¶¶ 42-43, 57, 77, 96.

Following her first accommodation request in 2023, even though Plaintiff was on leave while Amazon evaluated her request, her own allegations show Amazon did not reduce her UPT balance. *See id*. ¶¶ 55-56. Thereafter, she alleges Amazon reevaluated her accommodation request

and required her to provide additional medical documentation. *Id.* ¶ 59. Plaintiff claims the reason Amazon required her to submit new documentation was not due to a common policy, but rather the alleged actions of one specific manager (Charlie D.) whom she claims had complained about her needing an accommodation. *Id.* ¶ 63.

In late June 2024, after taking on new duties, Plaintiff sought an accommodation again and went on leave while Amazon evaluated her request. *Id.* ¶¶ 65, 69-70. She alleges Amazon delayed the determination of her request which led to a UPT reduction. *Id.* ¶¶ 71-74. However, once again, her specific factual allegation is that she was on the extended leave due to the actions of one manager (Charles Jones) whom she claims was delinquent in reviewing and approving her request. *Id.* ¶ 74, 76. In any event, Plaintiff does not allege Amazon failed to return her UPT time after granting her accommodations, nor does she allege any facts that support generalizing the alleged conduct of these managers to other employees.

Similarly, after Plaintiff returned to work in August 2024, Plaintiff alleges that Amazon's system assigned her tasks that violated her accommodation. *Id.* ¶¶ 80-81. Once again, she alleges this occurred because a specific manager (Charles Jones) "could not be bothered" to update the system for her. *Id.* ¶ 86. Lastly, Plaintiff claims that two specific managers (Charlie D. and Bridget) harassed her for seeking an accommodation, but her allegations are all specific to those managers, and she alleges no improper conduct after October of 2024 or any allegations that plausibly suggests other employees had similar experiences. *Id.* ¶¶ 90-96.

All of Plaintiff's specific factual allegations demonstrate that she is not in fact asserting a common claim because commonality demands that all class members' claims "depend upon a common contention . . . [that] is capable of classwide resolution." *Wal-Mart, Inc. v. Dukes*, 564

U.S. 338, 350 (2011).[9] Simply articulating a common question is not enough. "What matters is not the raising of common questions—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (emphasis in original). This requires that Plaintiff demonstrate "that examination of all the class members' claims for relief will produce a common answer to the crucial question *why was I disfavored*." *Id.* at 352 (emphasis in original). Here, Plaintiff's allegations demonstrate she cannot satisfy this requirement because the proof regarding her actual claims will not tend to prove the claims of any other proposed class member.

### D. <u>Purporting to Challenge the UPT Policy Does Not Save Plaintiff's Class Claims.</u>

Merely asserting that all employees are subject to the UPT policy and receive auto-generated emails about the policy does not cure the Complaint's deficiencies.

First, Plaintiff's discrimination class claims (Fourth and Fifth Causes of Action) are incompatible with class treatment in this case given the nature of what each purported class member would need to prove to establish a purported claim. To pursue a disability discrimination claim, each employee must possess a qualifying disability within the meaning of the ADA[10] and establish he was qualified to perform the essential functions of his job with or without reasonable accommodation. *Cagle*, 680 F. Supp. 3d at 437–38. *Brizzi v. Utica Mut. Ins. Co.*, 529 F. Supp. 3d 44, 56 (E.D.N.Y. 2021) ("[a] claim of disability discrimination under the NYSHRL is governed

---

[9] "The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart*, 564 U.S. at 348 (citation omitted); *see also Won v. Amazon.com Services LLC*, 2025 WL 2476392, at *3 (E.D.N.Y. Aug. 28, 2025) (vacated in part on other grounds); *Ellersick v. Monro Muffler Brake, Inc.*, 2017 WL 1196474, at *3 (W.D.N.Y. Mar. 31, 2017).

[10] An individual is "disabled" under the ADA only if she "'has a physical or mental impairment that substantially limits one or more major life activities,' has a 'record of such an impairment, or is 'regarded as having such an impairment.'" *Cagle v. Weill Cornell Med.*, 680 F. Supp. 3d 428, 437–38 (S.D.N.Y. 2023) (quoting 42 U.S.C.S. § 12102(1)).

by the same legal standards as govern federal ADA claims").[11] Yet Plaintiff purports to pursue disability discrimination claims related to Amazon's UPT policy on behalf of all hourly employees in Amazon's New York logistics facilities "who sought or intended to seek a disability accommodation"—even if the employee does not have a qualifying disability or cannot perform the essential function of their jobs with or without a reasonable accommodation. Compl. ¶ 98.

In *Hohider*, the Third Circuit Court of Appeals rejected an ADA class action under similar circumstances. 574 F.3d at 196. The plaintiffs in *Hohider* purported to challenge a company-wide policy requiring employees to have 100% clearance to return to work following a medical leave, which they claims was per se illegal. The court held that, even though plaintiffs purported to challenge a general policy, the claims were not amenable to class treatment under Rule 23(a) or 23(b)(2) because the court must still conduct a "statutorily required inquiry" to determine whether each class member was actually qualified with a disability and could perform the essential functions of the job with or without a reasonable accommodation. *Id*. at 196.[12] The Third Circuit explained:

> Because the statutorily required inquiry into qualification is incompatible with the requirements of Rule 23 in this case, and because plaintiffs cannot adjudicate their

[11] Whether each Plaintiff was disabled within the meaning of the statutes, whether they were qualified to perform the essential functions of their jobs, and whether they were subject to an adverse employment action, are questions unique to each individual. *See Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 483, 119 S. Ct. 2139, 2147 (1999), overturned on other grounds by legislation (2009) ("The definition of disability also requires that disabilities be evaluated 'with respect to an individual' and be determined based on whether an impairment substantially limits the 'major life activities of such individual.' Thus, whether a person has a disability under the ADA is an individualized inquiry." (quoting § 12102(2))); *Gronne v. Apple Bank For Sav.*, 1 F. App'x 64, 67 (2d Cir. 2001) ("The question of whether a proposed accommodation is reasonable is 'fact-specific' and must be evaluated on 'a case-by-case basis.'" (quoting *Wernick v. Federal Reserve Bank*, 91 F.3d 379, 385 (2d Cir.1996)).

[12] Rule 23(b)(2) permits certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2); *see Wal-Mart*, 564 U.S. at 360. "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted - the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them. *Wal-Mart*, 564 U.S. at 360 (internal quotations omitted).

> claims and requested relief without it, the class cannot be certified. *See* Rules Enabling Act, 28 U.S.C. § 2072(b).

*Id*. at 196.

Other courts have reached a similar conclusion in the disability discrimination context. *See Semenko*, 2013 WL 1568407, at *11 (striking ADA class claims because "no amount of discovery will demonstrate that the class can be maintained."); *Blatch ex rel. Clay v. Hernandez*, 360 F. Supp. 2d 595, 636 (S.D.N.Y. 2005) ("The remainder of Plaintiffs' claims concerning lack of reasonable accommodation or other Disability Rights Statute violations are not susceptible to class-based treatment under Rule 23(b)(2) … [because] [r]easonable accommodation issues are … specific to the circumstances and needs of particular individuals."); *Heggs*, 2023 WL 9786044, at *20 (explaining that while all members of the mobility-based disability class would have been subject to the same NYPD arrest policies, "the individual claims of each class member (if any) will almost certainly arise from different conditions and circumstances, and there would inevitably be a great number of factual differences in the class members' injuries (if any)"); *Kent-Chojnicki*, 180 F.R.D. at 243 (recognizing "individualized fact determination" needed into "[w]hether or not an individual is 'disabled' as defined under the statute," and whether "each class member was otherwise qualified and able to perform functions of available regular positions."). Claims relating to individualized determinations for disability accommodations, like those at issue here, are "incompatible with the requirements of Rule 23[.]" *Hohider*, 574 F.3d at 196.[13]

---

[13] The Complaint's own commonality allegations underscore the problem. Indeed, the Complaint identifies three questions that allegedly satisfy the commonality requirement for the discrimination class claims, but each of them ***presumes*** all class members' absences are "protected" by federal and state disability laws. *See, e.g.,* Compl. ¶ 101(a) ("whether employees' absences are protected by the ADA"), ¶ 101(b) ("whether those absences are protected by applicable law"), ¶ 101(c) ("whose absences were legally protected"). But that conclusion cannot be presumed—it depends on individualized and unique facts that must be adjudicated as a condition to answering those allegedly common questions, which cannot be done on a common basis. *Hohider*, 574 F.3d at 195; *Kent-Chojnicki*, 180 F.R.D. at 243; *Heggs*, 2023 WL 9786044, at *20.

Second, the sprawling class definition and expansive request for injunctive relief further demonstrate that her claims are not susceptible to class treatment. The putative class covers "[a]ll persons employed by Amazon in its logistics facilities in New York State as hourly workers from November 12, 2022 up to and including the date of any judgment in this case, who sought or intended to seek a disability accommodation from Amazon." Compl. ¶ 98. It therefore covers employees who necessarily were not subject to any purported UPT-based harm, including those who 1) were ineligible for earning UPT under the policy, 2) stayed at work while Amazon processed their accommodation and therefore did not require time off while waiting for a decision, 3) swiped into a facility like Plaintiff and were not charged UPT, 4) made their request for an accommodation while already on an approved leave of absence, or 5) promptly completed the accommodation process without a reduction to their UPT.

Plaintiff seeks equally broad injunctive relief. She seeks an order "a) Declaring the acts, practices, and omissions complained of herein violate the ADA, NYSHRL, and NYLL; b) Enjoining Defendant from further discriminatory actions in violation of the ADA, NYSHRL, and NYLL, including by affirmatively ordering Defendants to modify its employment policies and practices to comply with the ADA, NYSHRL, and NYLL; c) [requiring Amazon to] [r]e-process[] all terminations of employment of Class Members since November 12, 2022 that were based on allegedly exceeding UPT allowances, under revised, lawful policies and procedures." Compl. at pp. 27-28. Plaintiff's request for an injunction "reprocessing" all terminations further demonstrates why these claims cannot meet the Rule 23 requirements. Not all the proposed class members have been terminated (including Plaintiff).[14] Not all terminated employees were

[14] Plaintiff's claim clearly fails commonality and typicality because she is a current employee who continues to work successfully with an accommodation. *See* Fed. R. Civ. P. 23(a).

discharged because they accrued negative UPT. And among those terminated due to a negative UPT balance, not all accrued the UPT while on leave awaiting a decision on their accommodation requests.

## V. CONCLUSION

Amazon respectfully requests that the Court grant its motion and dismiss Plaintiff's claims for injunctive relief and her Fourth through Eighth Causes of Action.

Dated: January 16, 2026

MORGAN, LEWIS & BOCKIUS LLP

*/s/ Michael S. Burkhardt*

Michael S. Burkhardt
2222 Market Street
Philadelphia, PA 19103
Tel: (215) 963-5130
michael.burkhardt@morganlewis.com

Brian D. Berry (*pro hac vice forthcoming*)
One Market, Spear Street Tower
San Francisco, CA 94105
Tel: (415) 442-1000
brian.berry@morganlewis.com

*Attorneys for Defendant Amazon.com Services, LLC*

## LOCAL CIVIL RULE 7.1(C) CERTIFICATION

I hereby certify that the foregoing Memorandum of Law In Support Of Defendant's Motion to Dismiss complies with the word-count limitations set forth in Local Civil Rule 7.1(c) and the Court's Individual Practices in Civil Cases Rule 4(b). This Memorandum of Law contains 6,976 words.

*/s/ Michael S. Burkhardt*