**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **CAYLA LYSTER,**<br>*on behalf of herself and all persons*<br>*similarly situated,*<br><br>Plaintiffs,<br><br>v.<br><br>**AMAZON.COM SERVICES, LLC,**<br><br>Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:   Case No. 1:25-cv-09423-VEC |

**PLAINTIFF'S OPPOSITION TO AMAZON.COM SERVICES, LLC'S MOTION TO
DISMISS PLAINTIFF'S COMPLAINT**

Dated: February 19, 2026

Katherine Greenberg
Shyamala Ramakrishna
**A BETTER BALANCE**
500 7th Avenue, 8th Floor
New York, NY 10018
Phone: 212-430-5982
Email: kgreenberg@abetterbalance.org
        sramakrishna@abetterbalance.org

Maia Goodell
**VLADECK, RASKIN & CLARK P.C.**
111 Broadway, Suite 1505
New York, NY 10006
Phone: (212) 403-7300
Email: mgoodell@vladeck.com

*Attorneys for Plaintiff*
*and the Proposed Class*

### TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ............................................................................................................... 1

FACTUAL ALLEGATIONS ................................................................................................ 1

ARGUMENT ..................................................................................................................... 4

    A.   Plaintiff Has Standing to Pursue Injunctive Relief Individually and on Behalf of the Proposed Class ............................................................................................................ 4

    B.   Plaintiff Has Pled Plausible Claims Arising Out of Defendant's UPT Policy ................... 8

       1.   Plaintiff Has Pled Plausible Disability Discrimination Claims Arising Out of Defendant's UPT Policy. ......................................................................................... 8

       2.   Plaintiff Has Pled Plausible ADA Retaliation Claims Arising Out of Defendant's UPT Policy. ..................................................................................................... 12

       3.   Plaintiff Has Pled Plausible New York Labor Law Retaliation Claims Arising Out of Defendant's UPT Policy. ....................................................................... 14

       4.   Plaintiff Has Pled Plausible Interference Claims Arising Out of Defendant's UPT Policy. ............................................................................................................. 15

    C.   Plaintiff's Claims Arising from Defendant's UPT Policy Are Suitable for Classwide Treatment ................................................................................................................ 18

       1.   Defendant Prematurely Attacks the Certifiability of Plaintiff's Classwide Allegations……………………………………………………………………18

       2.   Plaintiff's Claims Are Suitable for Classwide Treatment ........................................... 21

          a)   Plaintiff has satisfied the commonality requirement set forth by Rule 23(a). .......... 21

          b)   Plaintiff has satisfied Rule 23(b)(2)'s requirements for a declaratory and injunctive relief class. ........................................................................................................ 23

          c)   Individualized questions as to "qualification" do not preclude classwide treatment. 25

CONCLUSION ................................................................................................................. 28

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997).............................................................................................24

*Bates v. United Parcel Servs., Inc.*,
   511 F.3d 974 (9th Cir. 2007) .........................................................................5, 26

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)..............................................................................................8

*Bohnak v. Marsh & McLennan Cos.*,
   79 F.4th 276 (2d Cir. 2023) ..................................................................................4

*Brooklyn Ctr. for Indep. of the Disabled v. Bloomberg*,
   290 F.R.D. 409 (S.D.N.Y. 2012) .....................................................................7, 24

*Brooklyn Ctr. for Indep. of the Disabled v. Metro. Transportation Auth.*,
   11 F.4th 55 (2d Cir. 2021) ..................................................................................25

*Brown v. City of Tucson*,
   336 F.3d 1181 (9th Cir. 2003) ............................................................................15

*Brown v. Kelly*,
   244 F.R.D. 222 (S.D.N.Y. 2007), *aff'd in part, vacated in part on other
   grounds*, 609 F.3d 467 (2d Cir. 2010)................................................................22

*Calibuso v. Bank of Am. Corp.*,
   893 F. Supp. 2d 374 (E.D.N.Y. 2012) ...........................................................18, 20

*Carter v. HealthPort Techs., LLC*,
   822 F.3d 47 (2d Cir. 2016)....................................................................................4

*Chedwick v. UPMC*,
   263 F.R.D. 269 (W.D. Pa. 2009) ...................................................................20, 27

*Chen-Oster v. Goldman, Sachs & Co.*,
   877 F. Supp. 2d 113 (S.D.N.Y. 2012).....................................................18, 19, 20

*Blatch ex rel. Clay v. Hernandez*,
   360 F. Supp. 2d 595 (S.D.N.Y. 2005).................................................................27

*Cleary v. Whole Foods Mkt. Rocky Mountain/Southwest L.P.*,
   No. 15-CV-01247, 2016 WL 7048899 (D. Colo. Dec. 5, 2016) ..........................20

*Crawford v. Bronx Cmty. Coll.*,
  No. 22 CIV. 1062, 2024 WL 3898361 (S.D.N.Y. Aug. 21, 2024) ......................................8, 9

*Criado v. IBM Corp.*,
  145 F.3d 437 (1st Cir. 1998) ........................................................................................13

*Davis v. Navient Corp.*,
  No. 17-cv-992, 2018 WL 1603871 (W.D.N.Y. Mar. 12, 2018) .....................................18

*Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*,
  804 F.3d 178 (2d Cir. 2015) .........................................................................................10

*Disabled in Action v. City of New York*,
  437 F. Supp. 3d 298 (S.D.N.Y. 2020) ..............................................................................9

*Doe v. Pfrommer*,
  148 F.3d 73 (2d Cir. 1998) ...........................................................................................11

*Dopico v. Goldschmidt*,
  687 F.2d 644 (2d Cir. 1982) ...........................................................................................9

*Duplan v. City of New York*,
  888 F.3d 612 (2d Cir. 2018) .........................................................................................13

*E.E.O.C. v. Day & Zimmerman NPS, Inc.*,
  265 F. Supp. 3d 179 (D. Conn 2017) .............................................................................16

*EEOC v. FedEx Ground Package Sys., Inc.*,
  158 F. Supp. 3d 393 (W.D. Pa. 2016) ...........................................................................27

*Floyd v. City of New York*,
  283 F.R.D. 153 (S.D.N.Y. 2012) .....................................................................................6

*Fogleman v. Mercy Hosp., Inc.*,
  283 F.3d 561 (3d Cir. 2002) ..........................................................................................17

*Frilando v. New York City Transit Auth.*,
  463 F. Supp. 3d 501 (S.D.N.Y. 2020) ..............................................................................8

*Goetz v. Ainsworth Pet Nutrition, LLC*,
  No. 24-CV-04799, 2025 WL 692426 (S.D.N.Y. Mar. 3, 2025) .....................................20

*Guariglia v. Procter & Gamble Co.*,
  No. 15-cv-4307, 2018 WL 1335356 (E.D.N.Y. Mar. 14, 2018) ....................................18

*Gupta v. Al Jazeera Am., LLC*,
  No. 16-CV-2980, 2018 WL 1605571 (S.D.N.Y. Mar. 29, 2018) ....................................18

*Healy v. Milliman, Inc.*,
    164 F.4th 701 (9th Cir. 2026) .......................................................................... 5

*Heggs v. City of New York*
    No. 17-cv-3234, 2023 WL 9786044, at *13 (E.D.N.Y. Aug. 24, 2023) ................... 6

*Hendricks-Robinson v. Excel Corp.*,
    164 F.R.D. 667 (C.D. Ill. 1996) ...................................................................... 26

*Henrietta D. v. Bloomberg*,
    331 F.3d 261 (2d Cir. 2003) ............................................................................. 9

*Herrick v. Shutterstock, Inc.*,
    No. 23-cv-3191, 2024 WL 1348754 (S.D.N.Y. Mar. 29, 2024) ..................... 19, 21

*Hidalgo v. Johnson & Johnson Consumer Cos.*,
    148 F. Supp. 3d 285 (S.D.N.Y. 2015) ..................................................... 19, 20, 26

*Higgins v. New Balance Athletic Shoe, Inc.*,
    194 F.3d 252 (1st Cir. 1999) ........................................................................... 10

*Hill v. City of New York*,
    136 F. Supp. 3d 304 (E.D.N.Y. 2015) ....................................................... 5, 6, 7, 24

*Hobbs v. Knight-Swift Transp. Holdings, Inc.*,
    No. 21 Civ. 1421, 2022 WL 118256 (S.D.N.Y. Jan. 12, 2022) ............................ 21

*Hohider v. UPS*,
    574 F.3d 169 (3d Cir. 2009) ....................................................................... 26, 27

*Holmes v. Godinez*,
    311 F.R.D. 177 (N.D. Ill. 2015) ....................................................................... 24

*Hyland v. Navient Corp.*,
    48 F.4th 110 (2d Cir. 2022) .............................................................................. 4

*Johnson v. Nextel Commc'ns Inc.*,
    780 F.3d 128 (2d Cir. 2015) ............................................................................ 26

*Kassman v. KPMG LLP*,
    925 F. Supp. 2d 453 (S.D.N.Y. 2013) ......................................................... 19, 20

*Katz v. Donna Karan Co.*,
    872 F.3d 114 (2d Cir. 2017) ............................................................................. 4

*Keith v. Cnty. of Oakland*,
    703 F.3d 918 (6th Cir. 2013) ........................................................................... 11

*Kreisler v. Second Ave. Diner Corp.*,
     731 F.3d 184 (2d Cir. 2013)...................................................................................................4

*Lacy v. Cook Cnty.*,
     897 F.3d 847 (7th Cir. 2018) ................................................................................................25

*Lane v. Kitzhaber*,
     283 F.R.D. 587 (D. Or. 2012) ..............................................................................................26

*Levy v. NYC Health*
     660 F. Supp. 3d 220, 233 (S.D.N.Y. 2023), *clarified on denial of
     reconsideration*, No. 21-CV-9142, 2023 WL 4364203 (S.D.N.Y. July 6, 2023)...................12

*Littlejohn v. City of New York*,
     795 F.3d 297 (2d Cir. 2015).................................................................................................13

*Lopez v. YWCA of Ne. N.Y.*,
     No. 1:24-CV-01516, 2025 WL 641569 (N.D.N.Y. Feb. 27, 2025).......................................16

*Mazzola v. Roomster Corp.*,
     849 F. Supp. 2d 395 (S.D.N.Y. 2012)..............................................................................20, 21

*McSweeney v. Cohen*,
     776 F. Supp. 3d 200 (S.D.N.Y. 2025)...................................................................................14

*Menoken v. Dhillon*,
     975 F.3d 1 (D.C. Cir. 2020) .................................................................................................17

*Mondzelewski v. Pathmark Stores, Inc.*,
     162 F.3d 778 (3d Cir. 1998).................................................................................................15

*In re Monumental Life Ins. Co.*,
     365 F.3d 408 (5th Cir. 2004) ...............................................................................................21

*Mortensen v. County of Sacramento*,
     368 F.3d 1082 (9th Cir. 2004) ...............................................................................................5

*N.Y. Univ. Med. Ctr. v. N.L.R.B.*,
     156 F.3d 405 (2d Cir. 1998).................................................................................................16

*In re Navy Chaplaincy*,
     697 F.3d 1171 (D.C. Cir. 2012) .............................................................................................5

*Noll v. Int'l Bus. Machines Corp.*,
     787 F.3d 89 (2d Cir. 2015)........................................................................................9, 10, 11

*O'Shea v. Littleton*,
     414 U.S. 488 (1974)..............................................................................................................4

v

*Oross v. Kutztown Univ.*,
 No. CV 21-5032, 2023 WL 4748186 (E.D. Pa. July 25, 2023)................................17

*Pappas v. D.C.*,
 No. CV 19-2800, 2024 WL 1111298 (D.D.C. Mar. 14, 2024).........................................24, 26

*Pinckney v. Carroll*,
 No. 18-CV-12198, 2019 WL 6619484 (S.D.N.Y. Dec. 4, 2019) ............................................6

*Price v. City of New York*,
 797 F. Supp. 2d 219 (E.D.N.Y. 2011) .....................................................................................10

*Punt v. Kelly Servs.*,
 862 F.3d 1040 (10th Cir. 2017) ...............................................................................................10

*Ramirez v. City of New York*,
 No. 23-CV-9450, 2025 WL 896498 (S.D.N.Y. Mar. 24, 2025)..............................................17

*Robidoux v. Celani*,
 987 F.2d 931 (2d Cir. 1993)....................................................................................................21

*Robles v. Medisys Health Network, Inc.*,
 No. 19CV6651, 2020 WL 3403191 (E.D.N.Y. June 19, 2020)...............................................16

*Schroedel v. N.Y. Univ. Med. Ctr*
 885 F. Supp. 594, 599 (S.D.N.Y. 1995)....................................................................................6

*Shepard v. Rhea*,
 No. 12-CV-7220, 2014 WL 5801415 (S.D.N.Y. Nov. 7, 2014)..............................................22

*Solomon v. Vilsack*,
 763 F.3d 1 (D.C. Cir. 2014) ....................................................................................................12

*Sughrim v. New York*,
 690 F. Supp. 3d 355 (S.D.N.Y. Sept. 28, 2023) ..........................................................5, 23, 24

*Tafolla v. Heilig*,
 80 F.4th 111 (2d Cir. 2023) ......................................................................................................9

*U.S. Airways, Inc. v. Barnett*,
 535 U.S. 391 (2002)................................................................................................................10

*Vega v. Hempstead Union Free Sch. Dist.*,
 801 F.3d 72 (2d Cir. 2015)........................................................................................................8

*Wal-Mart v. Dukes*,
 564 U.S. 338 (2011)..........................................................................................................22, 26

*Westchester Indep. Living Ctr., Inc. v. State Univ. of New York*,
    331 F.R.D. 279 (S.D.N.Y. 2019) .................................................................21, 22

*Winfield v. Citibank, N.A.*,
    842 F. Supp. 2d 560 (S.D.N.Y. 2012).................................................................19

*Witcher v. New York City Dept. of Educ.*,
    No. 23-465, 2024 WL 3220264 (2d Cir. June 28, 2024).....................................15

*Woods-Early v. Corning Inc.*,
    330 F.R.D. 117 (W.D.N.Y. 2019)........................................................................18

*Zann Kwan v. Andalex Grp. LLC*,
    737 F.3d 834 (2d Cir. 2013)..........................................................................12, 13

*Zhang v. Centene Mgmt. Co.*,
    No. 21-CV-5313, 2023 WL 2969309 (E.D.N.Y. Feb. 2, 2023) ...........................14

**Statutes**

29 U.S.C. § 158(a)(1)...............................................................................................16

42 U.S.C § 12112(b)(3)(A) .........................................................................................9

42 U.S.C. § 12112(b)(5)(A) .........................................................................................8

42 U.S.C. § 12203(a) ................................................................................................27

42 U.S.C. § 12203(b) ...........................................................................................15, 27

N.Y. Exec. L. § 296(3)(1) ............................................................................................9

N.Y. Exec. L. § 296(7).............................................................................................12

N.Y. Exec. Law § 292(21) ...........................................................................................9

National Labor Relations Act (NLRA) § 8(a)(1)........................................................16

New York Labor Law § 215 .......................................................................................14

**Court Rules**

FRCP Rule 12(f) .......................................................................................................18

Rule 12(b)(6)............................................................................................................18

Rule 12(f) ................................................................................................................18

Rule 23 ............................................................................................................ *passim*

## INTRODUCTION

Plaintiff Cayla Lyster, on behalf of herself and other employees similarly situated, alleges that Defendant Amazon.com Services, LLC ("Amazon") maintains a uniform policy ("UPT Policy") that punishes class members when they miss work while awaiting approval of disability accommodation requests.[1] Plaintiff claims that she and the proposed class were, and continue to be, injured as a result of this policy. She also brings disability discrimination and retaliation claims based on her individual treatment at her Amazon worksite. Defendant has moved to dismiss the policy-based claims on grounds that Plaintiff does not have standing to challenge the UPT Policy and has failed to state claims arising from the UPT Policy on behalf of herself or the proposed class. As Plaintiff's Complaint is more than sufficient to withstand dismissal at this early stage, the motion should be denied in its entirety.

## FACTUAL ALLEGATIONS

This case arises out of Defendant's unlawful UPT Policy, which deters and penalizes low-wage hourly workers' requests for disability accommodations.

Amazon subjects all hourly employees across New York State to the UPT Policy, an attendance policy under which automated systems track employee attendance, and then automatically impose discipline up to and including termination. Employees start with a bank of Unpaid Time Off ("UPT") hours. Amazon deducts from that bank for any absence or lateness that is not already covered by another form of approved time off. Complaint (ECF 1) ¶¶ 28–29.

Pursuant to the UPT Policy, Amazon uniformly deducts UPT from hourly employees who are not working because they have pending requests for reasonable accommodations. *Id.* ¶¶ 31–32. While these employees are unable to work and awaiting a decision on their

---

[1] Defendant's Memorandum of Law in Support of Defendant's Motion to Dismiss (ECF 21), is cited as "Def. Br."

accommodation requests, Amazon chooses not to excuse their absences. *Id.* ¶ 33. Instead, Amazon drains their UPT balances, then sends them repeated emails threatening to terminate their employment. *Id.* ¶ 34. Although Amazon claims to refund an employee's UPT if their accommodation request is later approved, that employee still receives disciplinary notices and can still be automatically terminated while waiting. *Id.* ¶¶ 34–35. Moreover, the result of the default deduction policy is often that Amazon fails to refund UPT at all. *Id.* ¶ 35. As a result, employees reasonably and accurately believe that they may be fired for requesting accommodations. *Id.*

As is relevant to the instant motion,[2] Plaintiff Cayla Lyster has worked as an hourly Amazon warehouse associate since 2022. *Id.* ¶ 41. In November 2023, Ms. Lyster requested reasonable accommodation for work limitations related to her Ehlers-Danlos syndrome, a permanent genetic connective-tissue disorder that substantially impairs several major life activities. *Id.* ¶¶ 41–43, 52. Although suitable work was available, Amazon abruptly forced Ms. Lyster to stop working and stay home, unpaid, while awaiting the outcome of her accommodation request. *Id.* ¶ 53. While Amazon barred Ms. Lyster from working, its Human Resources Department informed her it would deduct from her UPT balance if she missed work while awaiting accommodation. *Id.* ¶ 55. Thus, in fear of termination pursuant to the UPT Policy, Ms. Lyster commuted 90 minutes every day to clock in and out of work, without pay. *Id.* ¶¶ 55–56. Finally, in December 2023, Amazon brought Ms. Lyster back to work in an available role identified weeks prior as an appropriate accommodation for her needs. *Id.* ¶ 57.

---

[2] As Defendant acknowledges, its motion to dismiss focuses exclusively on claims arising from the UPT Policy. As such, the factual outline here is limited to only those facts relating to Ms. Lyster's claims resulting from the UPT Policy.

Then, in June 2024, Ms. Lyster found herself subject to the UPT policy for the second time in seven months: Amazon arbitrarily demanded new medical documentation, though Ms. Lyster had already provided Amazon with more than sufficient information to establish both her permanent disability and her ongoing need for accommodation. *Id.* ¶¶ 59–60, 62. Ms. Lyster complied, but Amazon still reassigned her to a role that was clearly incompatible with her established disability needs. *Id.* ¶¶ 64–66. Promptly, Ms. Lyster submitted yet more medical documentation from her health provider explaining why this reassignment would not work. *Id.* ¶ 70. In response, Amazon again forced her onto an unpaid leave that lasted almost six weeks. *Id.* ¶¶ 71–72. During that forced leave, while Ms. Lyster again awaited accommodation, Amazon again applied its UPT Policy, deducting her UPT and repeatedly threatening her with termination. *Id.* ¶ 73.

Ms. Lyster filed an EEOC charge against Amazon, and the EEOC found in Ms. Lyster's favor, concluding there was reasonable cause to believe not only that Amazon violated Ms. Lyster's rights individually, but also that Amazon's sending negative UPT notices to employees out of work awaiting accommodation reasonably creates "a chilling effect" deterring requests for accommodation in violation of the ADA. *Id.* ¶¶ 19–20. Ms. Lyster continues to work at Amazon. She and her colleagues continue to be subject to the UPT policy—and therefore to discipline and possible termination—should they ever seek disability accommodations, or should Amazon again choose to arbitrarily rescind their existing accommodations. *Id.* ¶ 96.

## ARGUMENT

### A.  Plaintiff Has Standing to Pursue Injunctive Relief Individually and on Behalf of the Proposed Class

Defendant argues that Plaintiff lacks standing to pursue injunctive relief individually or on behalf of the class. Defendant's attacks are meritless, because Plaintiff has more than adequately alleged a real and immediate threat of future injury.

When standing is challenged solely on the basis of the pleadings, a court must "accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Bohnak v. Marsh & McLennan Cos.*, 79 F.4th 276, 283 (2d Cir. 2023) (citation modified). Thus, the task of the court is only to determine whether the complaint "allege[s] facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (citation modified); *see also Katz v. Donna Karan Co.*, 872 F.3d 114, 119 (2d Cir. 2017) (on a facial standing challenge, a plaintiff has no evidentiary burden "for both parties can be said to rely solely on the facts as alleged").

To establish standing, Plaintiffs seeking injunctive relief must not only satisfy Article III's jurisdictional requirements but also show that the identified injury-in-fact presents a "real and immediate threat of repeated injury." *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187 (2d Cir. 2013) (citation modified). And though past harm is not in itself dispositive, "past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury." *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974). Additionally, establishing standing on behalf of a lead plaintiff is sufficient for a class action seeking injunctive relief. *See Hyland v. Navient Corp.*, 48 F.4th 110, 118 (2d Cir. 2022) ("In a class action, once standing is established for a named plaintiff, standing is established for the entire class.") (citation omitted).

4

Current employees have standing to challenge unlawful employment policies to which they are still subject. *See*, *e.g.*, *Hill v. City of New York*, 136 F. Supp. 3d 304, 353–59 (E.D.N.Y. 2015) (finding standing, and certifying declaratory and injunctive relief classes, predicated on employer's unlawful policies and its history of repeated application of those policies); *Sughrim v. New York*, 690 F. Supp. 3d 355, 393 (S.D.N.Y. Sept. 28, 2023) (affirming standing and certifying declaratory and injunctive relief class challenging employer's practice of denying religious accommodations because the proposed class included "officers who have been harmed by Defendants' policies in the past, and those who will have their applications considered according to allegedly unlawful policies and practices in the future"); *In re Navy Chaplaincy*, 697 F.3d 1171, 1176–77 (D.C. Cir. 2012) (finding standing for injunctive relief class challenging systematic religious discrimination in awarding of promotions where "plaintiffs have identified concrete and consistently-implemented policies claimed to produce such injury" and defendant "acknowledges that the challenged policies and procedures not only exist, but will continue to govern the conduct of future selection boards"); *Bates v. United Parcel Servs., Inc.*, 511 F.3d 974, 986 (9th Cir. 2007) (finding class of hearing-impaired employees challenging current employment policy that operated to categorically exclude them had standing to pursue injunctive relief because "the harm alleged is directly traceable to a written policy" and thus "there is an implicit likelihood of its repetition in the immediate future" (citation omitted)) [3]; *Mortensen v. County of Sacramento*, 368 F.3d 1082, 1086 (9th Cir. 2004) (finding standing because plaintiff showed he would suffer future injury under county's written policy regarding compensatory time off, where the policy had been applied to him in the past and remained in place).

---

[3] The Ninth Circuit continues to recognize *Bates* as good law, notwithstanding its abrogation "to the extent [it] would have permitted unnamed class members to go without demonstrating standing at trial or in any later claims process." *Healy v. Milliman, Inc.*, 164 F.4th 701, 706, 708 (9th Cir. 2026) (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021)).

It is logical that employees have standing to challenge policies that still apply to them. *Hill v. City of New York* is an instructive case in which a proposed class of 911 operators sought to enjoin sick leave and overtime policies administered by their employer. The court found that the plaintiffs had standing to seek injunctive relief, relying on the complaint's allegations that the defendant had a history of subjecting plaintiffs to its ongoing policy of "repeated unit-wide cancellation of sick leave," among other recurrent violations. 136 F. Supp. 3d at 359. Importantly, the court found that one plaintiff's "continued employment and repeated use of FMLA leave in the past" established the required "real and immediate threat of repeated injury to seek injunctive relief" on behalf of an FMLA class. *Id.* at 360.

In contrast, Defendant unsuccessfully relies on *Pinckney v. Carroll*, No. 18-CV-12198, 2019 WL 6619484 (S.D.N.Y. Dec. 4, 2019). *Pinckney* was not an employment case or a case alleging class claims; it involved denial of Section 8 housing benefits to an individual plaintiff. Plaintiff did not challenge an established policy; rather, she sought sweeping changes to the way housing vouchers were administered based exclusively on an alleged, individual instance of "past exposure to illegal conduct." 2019 WL 6619484, at *2 (quoting *O'Shea*, 414 U.S. at 495–96). The other cases upon which Defendant relies are just as factually and legally inapposite.[4]

Here, Plaintiff is a current employee working under the challenged UPT Policy. She alleges the policy systematically fails to accommodate her and her colleagues with disabilities,

---

[4] For example, *Heggs v. City of New York*, decided at the class certification stage, concerned a plaintiff seeking to enjoin law enforcement based on the speculative premise that he likely would not only be arrested again, but also harmed again "in a similar way" by police officers during and after said arrest. No. 17CV3234DGTAM, 2023 WL 9786044, at *13 (E.D.N.Y. Aug. 24, 2023), *report and recommendation adopted*, 2024 WL 759439 (E.D.N.Y. Feb. 23, 2024). And *Schroedel v. N.Y. Univ. Med. Ctr.*, also decided at the class certification stage, concerned a patient seeking to bring a class action against a hospital; the Court found there was no standing in part because the plaintiff did not allege that "she regularly utilize[d] the services of the Hospital for any specific medical condition" and, indeed, had sought medical care elsewhere since the injury at issue. 885 F. Supp. 594, 599 (S.D.N.Y. 1995). In any case, were this Court to consider non-employment cases when evaluating Defendant's challenge to standing, it has already noted that "the possibility of recurring injury ceases to be speculative when actual repeated incidents are documented." *Floyd v. City of New York*, 283 F.R.D. 153, 169 (S.D.N.Y. 2012) (citation omitted).

retaliates against them for requesting accommodations, and by its existence interferes with their exercise of their rights. A favorable decision in this case would protect Plaintiff from punishment pursuant to the UPT Policy and thus remedy the violations of her rights. Plaintiff has established a real and immediate threat of future injury, because she and the proposed class suffer *ongoing* injury by the UPT Policy's continuous operation to deter them from seeking reasonable accommodations. *See Brooklyn Ctr. for Indep. of the Disabled v. Bloomberg*, 290 F.R.D. 409, 418-20 (S.D.N.Y. 2012) (holding that the lack of an emergency preparedness program for disabled city residents "is itself an ongoing injury.").

To be able to work, as she wants to do, Plaintiff is currently receiving and will continue to require reasonable accommodation from Defendant for her permanent disability, which plausibly means for the rest of her employment with Defendant. Defendant is wrong to declare that future harm to Plaintiff individually rests on her "potentially needing another accommodation." Def. Br. at 12. Plaintiff was injured concretely not once, but twice, by the UPT Policy: She had an approved accommodation, Defendant arbitrarily rescinded that accommodation. Complaint ¶ 73. Where existing disability accommodations can at any point "come up for review" and trigger a waiting period with UPT penalties, Defendant's workplace policies virtually ensure future punishment for employees who request accommodations. There "is no indication on the record that the [Defendant has] discontinued [its] announced policy" or agreed not to apply it to Plaintiff. *See Hill*, 136 F. Supp. 3d at 360.

Because Plaintiff can seek to enjoin a policy that currently applies to her on behalf of herself and other affected employees, Defendant's challenge to standing fails.

**B. Plaintiff Has Pled Plausible Claims Arising Out of Defendant's UPT Policy**

To survive a 12(b)(6) motion, a complaint must include factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). On a motion to dismiss, "the question is not whether a plaintiff is likely to prevail, but whether the well-pleaded factual allegations plausibly give rise to an inference of unlawful discrimination, *i.e.*, whether plaintiff alleges enough to 'nudge[] their claims across the line from conceivable to plausible.'" *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015) (quoting *Twombly*, 550 U.S. at 570). Under these standards, Plaintiff has more than sufficiently pled plausible discrimination, retaliation, and interference claims on behalf of herself and the proposed class.

1. <u>Plaintiff Has Pled Plausible Disability Discrimination Claims Arising Out of Defendant's UPT Policy.</u>

Plaintiff alleges that, by maintaining and applying the UPT Policy, Defendant is unlawfully discriminating against her and her fellow class members by administering a policy that operates to deny them reasonable accommodations.

Defendant's blanket response to all of Plaintiff's claims regarding the UPT Policy is that these claims lack the requisite "causation." This argument fails in each instance. As to the disability discrimination causes of action, Defendant simply applies the wrong legal standard, conflating disparate treatment claims with failure-to-accommodate claims. *See, e.g., Crawford v. Bronx Cmty. Coll.*, No. 22 CIV. 1062, 2024 WL 3898361, at *11 (S.D.N.Y. Aug. 21, 2024) (distinguishing disability discrimination claims premised on adverse action from failure to accommodate).

In its statutory text, the ADA defines an employer's failure to accommodate employees with disabilities as discrimination. 42 U.S.C. § 12112(b)(5)(A); *see also Frilando v. New York*

*City Transit Auth.*, 463 F. Supp. 3d 501, 513 (S.D.N.Y. 2020). Discrimination also includes employers' utilization of "standards, criteria, or methods of administration . . . that have the effect of discrimination on the basis of disability." 42 U.S.C § 12112(b)(3)(A). Because "a failure to accommodate the needs of individuals with disabilities will often have the same practical effect as outright exclusion," the federal disability statutes mandate not only nominal inclusion, but also "reasonable measures to remove . . . barriers to accessibility." *Disabled in Action v. City of New York*, 437 F. Supp. 3d 298, 307 (S.D.N.Y. 2020) (citation modified); *see also Henrietta D. v. Bloomberg*, 331 F.3d 261, 273 (2d Cir. 2003) ("[T]he relevant inquiry asks not whether the benefits available to persons with disabilities and to others are actually equal, but whether those with disabilities are as a practical matter able to access benefits to which they are legally entitled."); *Dopico v. Goldschmidt*, 687 F.2d 644, 652 (2d Cir. 1982) ("It is not enough to open the door for the handicapped . . . ; a ramp must be built so the door can be reached.") (citation omitted).

A plaintiff states a *prima facie* failure-to-accommodate claim by demonstrating that "(1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Tafolla v. Heilig*, 80 F.4th 111, 118 (2d Cir. 2023) (citation omitted). A NYSHRL disability discrimination claim can also be premised on a failure to provide reasonable accommodations. N.Y. Exec. L. § 296(3)(1). The NYSHRL defines disability more broadly than the ADA and otherwise requires accommodation at least as broadly as federal law. N.Y. Exec. Law § 292(21), (21-e); *see Noll v. Int'l Bus. Machines Corp*., 787 F.3d 89, 94 (2d Cir. 2015) (applying the ADA standard to NYSHRL claim); *Crawford*, 2024 WL 3898361, at *11.

Defendant relies on the misstatement of the law that an ADA discrimination claim always requires a showing of "but-for causation," which it incorrectly argues requires Plaintiff to show purposeful intent to harm "because of" disability. *See* Def. Br. at 13. As detailed above, courts have unambiguously concluded that failure-to-accommodate claims are subject to a distinct standard. *See Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 264 (1st Cir. 1999) ("Unlike other enumerated constructions of 'discriminate,' this construction does not require that an employer's action be motivated by a discriminatory animus directed at the disability. Rather, any failure to provide reasonable accommodations for a disability is necessarily 'because of a disability.'" (citation omitted)); *Punt v. Kelly Servs.*, 862 F.3d 1040, 1048 (10th Cir. 2017) ("[T]he McDonnell Douglas scheme is inapposite in respect to [failure-to-accommodate] claims."); *Price v. City of New York*, 797 F. Supp. 2d 219, 233 (E.D.N.Y. 2011) (explaining that "causation, *i.e.* that Defendants took an adverse employment action against Plaintiff because of his disability" is not a required element of a failure to accommodate claim).

Here, Plaintiff has pleaded facts sufficient to meet the elements of a disability discrimination claim on behalf of herself and the proposed class. The Complaint alleges that the UPT Policy uniformly penalizes all employees who miss work while awaiting accommodations by deducting from their bank of job-protected UPT. Complaint ¶ 33. By categorically refusing to excuse interim absences integral to the accommodation process, Defendant is failing to provide this group of workers with an effective accommodation. "The hallmark of a reasonable accommodation is effectiveness." *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 189 (2d Cir. 2015); *see also U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 400 (2002) ("It is the word 'accommodation,' not the word 'reasonable,' that conveys the need for effectiveness."); *Noll*, 787 F.3d at 95 (a "reasonable accommodation may take many

10

forms, but it must be effective"). To be effective, an accommodation must provide qualified employees with disabilities with equal "benefits and privileges of employment." *Noll*, 787 F.3d at 94 (citation modified) (quoting 29 C.F.R. §§ 1630.2(o)(1)(iii)); *see also Doe v. Pfrommer*, 148 F.3d 73, 83 (2d Cir. 1998) ("[T]he central purpose of the ADA . . . is to assure that disabled individuals receive 'evenhanded treatment' in relation to the able-bodied.").

As the Complaint explains, Amazon employes who must miss work while awaiting approval of their accommodation requests are subject to default punishment under the UPT policy. To comply with the law, Amazon must provide employees with disabilities with excused time off as an interim accommodation, rather than putting these employees in the same position as chronic underperformers missing work. Indeed, rather than receiving accommodations to enable them to perform up to par, proposed class members are effectively forced to maintain *better* attendance records than other employees to save up enough UPT hours to weather these waiting periods and avoid losing their jobs. "Individuals with disabilities cannot be held to a higher standard of performance than non-disabled individuals." *Keith v. Cnty. of Oakland*, 703 F.3d 918, 924 (6th Cir. 2013) (citing 42 U.S.C. § 12112(b)(3)(A)). When Defendant deducts from the limited UPT reserves of employees who request accommodation, those employees are not afforded "the equal benefits and privileges of employment" and are denied the meaningful access required by the ADA.

Thus, Plaintiff has more than plausibly alleged disability discrimination claims arising out of Defendant's UPT Policy under the applicable ADA and NYSHRL standards. Because Defendant fails to cite a single case pertinent to the basis of Plaintiff's discrimination claims, its attempts to throw out Counts Four and Five of the Complaint at this early stage are wholly unpersuasive.

2.  Plaintiff Has Pled Plausible ADA Retaliation Claims Arising Out of Defendant's UPT Policy.

Defendant's attempt to paint Plaintiff's ADA retaliation claims with the same broad brush is similarly unavailing. In Count Six of the Complaint, Plaintiff alleges that Defendant's UPT Policy retaliates against proposed class members by deducting their UPT because they have requested reasonable accommodations, in violation of the ADA.[5] Defendant claims again that there is no causation between the proposed class's disabilities and Amazon's UPT penalties. But proposed class members would not have received attendance penalties had they not requested disability accommodations. Amazon's UPT policy levies attendance penalties on employees *as a consequence of* their disability accommodation requests; thus, it retaliates against employees who request disability accommodations.

To state a claim under the ADA for retaliation, "a plaintiff needs plausibly to allege (1) that she participated in a protected activity, (2) that she suffered an adverse employment action, and (3) that there was a causal connection between her engaging in the protected activity and the adverse employment action." *Levy v. NYC Health + Hosps.*, 660 F. Supp. 3d 220, 233 (S.D.N.Y. 2023), *clarified on denial of reconsideration*, No. 21-CV-9142, 2023 WL 4364203 (S.D.N.Y. July 6, 2023) (quoting *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010)). Requests for reasonable accommodation are protected activity under the ADA. *See Solomon v. Vilsack*, 763 F.3d 1, 15 n.6 (D.C. Cir. 2014) (citing rulings from every federal judicial circuit holding that requests for reasonable accommodation are protected activity). The but-for causation standard Defendant cites in its motion "does not require proof that retaliation was the only cause of the employer's action." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d

---

[5] The NYSHRL was amended shortly after the Complaint was filed to prohibit retaliation on the basis of requests for reasonable accommodations. 2025 Sess. Law News of N.Y. Ch. 600 (S. 3398) (amending N.Y. Exec. L. § 296(7)). The amendment is intended to "clarify existing law." *Id.*

Cir. 2013). Rather, a plaintiff need only establish that "the adverse action would not have occurred in the absence of the retaliatory motive." *Id.* Further, a plaintiff's "burden for establishing a *prima facie* case of retaliation is *de minimis*." *Duplan v. City of New York*, 888 F.3d 612, 626 (2d Cir. 2018) (citation omitted).

Defendant embellishes the meaning of a retaliatory "motive," inserting a requirement to prove animus that simply does not exist in the law. Showing a causal connection is not contingent on proving personal hostility toward the protected category at issue. Rather, a causal connection can be shown in a variety of ways, including "by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct." *Littlejohn v. City of New York*, 795 F.3d 297, 319 (2d Cir. 2015) (citation omitted) (reversing dismissal of plaintiff's retaliation claim where plaintiff pled only that her employer demoted her shortly after she engaged in protected activity).

Here, Amazon's UPT policy deducts time and sends disciplinary notices to employees who miss work because they requested disability accommodations. Defendant responds with the empty recitation that "the UPT policy applied to [Plaintiff] because she was absent from work, not because she had a disability or requested an accommodation."[6] Def. Br. at 14. Amazon would not have taken these actions but for employees' requests for accommodation. As a matter of policy, Amazon chooses to penalize by default the interim absences of employees who have requested disability accommodations. The UPT penalties "closely follow" employees' requests

---

[6] *See Criado v. IBM Corp.*, 145 F.3d 437, 444 (1st Cir. 1998) ("Asserting that the termination was based on [plaintiff]'s absenteeism rather than her disability does not justify [defendant's] action where the absence was the requested accommodation.").

for accommodation and would not occur but for those requests. Thus, on mechanical application of the ADA retaliation standard, Plaintiff has more than met the requirements at this stage.

3.  <u>Plaintiff Has Pled Plausible New York Labor Law Retaliation Claims Arising Out of Defendant's UPT Policy.</u>

Plaintiff's NYLL retaliation claims, pled in Count Eight of the Complaint, are equally plausible. Similar to the ADA, a plaintiff making a claim of retaliation under Section 215 of the NYLL must allege "(1) participation in protected activity known to the defendant . . . ; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Zhang v. Centene Mgmt. Co.*, No. 21-CV-5313, 2023 WL 2969309, at *11 (E.D.N.Y. Feb. 2, 2023) (citation modified).

But, as of 2023, the NYLL is additionally explicit in making it unlawful to "discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee . . . because such employee has used any legally protected absence pursuant to federal, local, or state law." N.Y.L.L. § 215(1)(a)(viii). Such unlawful penalties include "assessing any demerit, occurrence, any other point, or *deductions from an allotted bank of time*, which subjects *or could subject* an employee to disciplinary action." N.Y.L.L. § 215(1)(a) (emphases added). It is textually inarguable that the NYLL makes it unlawful to deduct from an employee's allotted bank of time because they missed work while waiting on their employer for approval of a disability accommodation.

Here, Plaintiff and the proposed class requested accommodation; as a result of these requests, they involuntarily missed work while Amazon, per its admitted policy, deducted from their allotted bank of UPT. In attempting to attack the NYLL claim, Defendant relies only on *McSweeney v. Cohen*, 776 F. Supp. 3d 200 (S.D.N.Y. 2025), a factually and legally dissimilar retaliation case involving a plaintiff's allegation that her employment contract was not renewed

after she complained about disability discrimination. Here, Plaintiff's and the proposed class's claims allege a systematic violation through an attendance policy that the NYLL prohibits to the letter. The NYLL's lawful absence provision exists to prevent exactly the kinds of abuses alleged in the Complaint, and the motion to dismiss Count Eight as implausible should be denied.

4. <u>Plaintiff Has Pled Plausible Interference Claims Arising Out of Defendant's UPT Policy.</u>

Finally, in Count Seven of the Complaint, Plaintiff has plausibly pled that the UPT Policy intimidates and threatens proposed class members who exercise their right to reasonable accommodations, thereby violating the ADA's prohibition on unlawful interference with protected rights. Here again, Defendant incorrectly conflates interference with invidious intent.

The ADA's prohibition on interference covers any employer conduct that would "coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of [ADA rights]." 42 U.S.C. §12203(b). Circuit courts have accordingly found that the ADA's anti-interference provision "sweeps more broadly than" its anti-retaliation provision. *Mondzelewski v. Pathmark Stores, Inc.*, 162 F.3d 778, 789 (3d Cir. 1998); *see also Brown v. City of Tucson*, 336 F.3d 1181, 1192 (9th Cir. 2003) (finding that "the ADA's interference provision . . . protects a broader class of persons against less clearly defined wrongs" than its anti-retaliation provision).

Defendant's contrary assertion that ADA interference claims require a showing of invidious intent, Def. Br. at 14 n.8, is unsupported by Second Circuit caselaw. The Second Circuit has used the intent-neutral plain statutory language of the ADA to define interference. *See Witcher v. New York City Dept. of Educ.*, No. 23-465, 2024 WL 3220264, at *3 (2d Cir. June 28, 2024) (defining interference by plain statutory language; distinguishing interference from

retaliation; giving plaintiff's complaint the "proper liberal construction" and consequently

vacating district court's dismissal of interference claims). And while some courts outside of this

Circuit have borrowed from Fair Housing Act caselaw to impose an extraneous intent

requirement on the ADA's statutory language, several courts in this Circuit have disagreed with

that approach. Instead, these courts have noted that the ADA's anti-interference provision is

worded similarly to the intent-neutral anti-interference provision of the National Labor Relations

Act (NLRA),[7] and have looked to interpretations of the NLRA as "useful guide[s] to interpreting

similar language in the ADA, as both [statutes] are part of a wider statutory scheme to protect

employees in the workplace nationwide." *E.E.O.C. v. Day & Zimmerman NPS, Inc.*, 265 F.

Supp. 3d 179, 204–05 (D. Conn 2017) (quoting *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561,

570 (3d Cir. 2002)); *see id.* at 203–06 (extensively analyzing interference claims via intent-

neutral NLRA standard; concluding that the "plain words of the [ADA] . . . preclude a party from

intimidating or coercing another party not to exercise his rights under the ADA, as well as

barring interference against a person who has exercised his rights under the ADA"; denying

summary judgment for employer on ADA interference claim); *Robles v. Medisys Health*

*Network, Inc.*, No. 19CV6651, 2020 WL 3403191, at *12–13 (E.D.N.Y. June 19, 2020)

(articulating plain-language standard for ADA interference and citing case law supporting

NLRA-derived intent-neutral standard); *Lopez v. YWCA of Ne. N.Y.*, No. 1:24-CV-01516, 2025

---

[7] Section 8(a)(1) of the NLRA protects employees' rights by prohibiting an employer from "interfer[ing] with, restrain[ing], or coerc[ing] employees in the exercise of the rights guaranteed in [the NLRA]." 29 U.S.C. § 158(a)(1). The Second Circuit has found that an employer's conduct violates this prohibition "if, under all the existing circumstances, the conduct has a reasonable tendency to coerce or intimidate employees, regardless of whether they are actually coerced." *N.Y. Univ. Med. Ctr. v. N.L.R.B.*, 156 F.3d 405, 410 (2d Cir. 1998).

WL 641569, at *11 (N.D.N.Y. Feb. 27, 2025) (articulating plain-language standard for ADA interference).[8]

Courts in the Third Circuit and D.C. Circuit have also applied or thoughtfully considered the intent-neutral NLRA standard. *Fogleman*, 283 F.3d at 570 (exclusively using NLRA standard to analyze ADA interference); *Oross v. Kutztown Univ.*, No. CV 21-5032, 2023 WL 4748186, at *25–26 (E.D. Pa. July 25, 2023), ("courts should give the word 'interference' its dictionary definition"; university interfered with plaintiff's ADA rights by creating a policy by which plaintiff's request for a reasonable accommodation was essentially already "dead on arrival"), *on reconsideration in part on other grounds*, 2024 WL 83506 (E.D. Pa. Jan. 8, 2024); *Menoken v. Dhillon*, 975 F.3d 1, 10 (D.C. Cir. 2020) (analyzing ADA retaliation and interference separately).

Here, Plaintiff and members of the proposed class requested disability accommodations, a protected activity under the ADA. While they waited for their accommodation requests to be approved, Amazon systematically subjected them to UPT penalties per its policy. The UPT penalties intimidated and threatened class members because they were, definitionally, threats of termination. Complaint ¶¶ 34–35. Thus, and as the EEOC concluded in Ms. Lyster's case, employees are chilled in their exercise of their rights to request accommodation. *Id.* ¶ 20. Even if intent to interfere with disability accommodations were required to make out this claim—which it should not be—Amazon's actions, as alleged, are sufficient to raise a plausible inference that the policy has the purpose or continuing, known effect of such interference, shifting the burden

---

[8] The singular decision Defendant cites from this District to support its argument, *Ramirez v. City of New York*, No. 23-CV-9450, 2025 WL 896498 (S.D.N.Y. Mar. 24, 2025), is inapposite; the plaintiff in that case "[did] not assert a claim for interference under the ADA, and the Court [was] unwilling to read one in for him." *Id.* at *4 n.3.

to Amazon to provide a legitimate purpose for the policy.[9] At the pleading stage, Defendant's attempt to discard the claim should be swiftly rejected.

## C. Plaintiff's Claims Arising from Defendant's UPT Policy Are Suitable for Classwide Treatment

Defendant next argues that Plaintiff's policy-based claims should be dismissed because they are "highly individualized" and thus incapable of classwide resolution. See Def. Br. at 15–17. Defendant's argument is both premature and specious.

### 1. Defendant Prematurely Attacks the Certifiability of Plaintiff's Classwide Allegations.

Defendant improperly styles this portion of its motion as a request to dismiss Plaintiff's class claims. In fact, the motion is accurately characterized as a motion to strike and should be rejected accordingly as a premature attack on the certifiability of Plaintiff's class claims. Moreover, however the motion is styled, the argument fails.

The adequacy of class allegations is properly evaluated under the rubric of FRCP Rule 12(f), not Rule 12(b)(6). *See, e.g.*, *Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 116–17 (S.D.N.Y. 2012); *Guariglia v. Procter & Gamble Co.*, No. 15-cv-4307, 2018 WL 1335356, at *11 (E.D.N.Y. Mar. 14, 2018); *Davis v. Navient Corp.*, No. 17-cv-992, 2018 WL 1603871, at *4 (W.D.N.Y. Mar. 12, 2018). Rule 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Courts have applied the motion to strike standard regardless of whether the motion is styled as a motion to dismiss or a motion to strike. *See, e.g.*, *Woods-Early v. Corning Inc.*, 330 F.R.D. 117, 122 (W.D.N.Y. 2019) (denying pre-discovery motion to dismiss class allegations using motion to strike standards); *Calibuso v. Bank of Am. Corp.*, 893 F. Supp. 2d 374, 391

---

[9] *See, e.g.*, *Gupta v. Al Jazeera Am., LLC*, No. 16-CV-2980, 2018 WL 1605571, at *10-12 (S.D.N.Y. Mar. 29, 2018) (finding that "[t]he combination of circumstan[tial evidence] here [was] sufficient to raise a reasonable inference of discriminatory intent").

(E.D.N.Y. 2012) (denying motion to strike or dismiss as premature under motion to strike standards).

It is well-settled that motions to strike class allegations are "rarely successful" and highly "disfavored" in this Circuit because they "ask[] a reviewing court to preemptively terminate the class aspects of litigation" and to do so "before plaintiffs are permitted to complete the discovery to which they would be entitled on questions relevant to class certification." *Herrick v. Shutterstock, Inc.*, No. 23-cv-3191, 2024 WL 1348754, at *4 (S.D.N.Y. Mar. 29, 2024) (citation modified).

Instead, "district courts in this Circuit have frequently found that a determination of whether the Rule 23 requirements are met is more properly deferred to the class certification stage, where a more complete factual record can aid the court in making this determination." *Winfield v. Citibank, N.A.*, 842 F. Supp. 2d 560, 573 (S.D.N.Y. 2012); *see*, *e.g.*, *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 464–65 (S.D.N.Y. 2013) (employer's motion to strike class allegations was procedurally premature in employment discrimination putative class action, because it attacked commonality prior to any motion to certify the class); *Hidalgo v. Johnson & Johnson Consumer Cos.*, 148 F. Supp. 3d 285, 297 (S.D.N.Y. 2015) (motion to strike class allegations premature because "because the parties have not yet had the opportunity to conduct discovery about whether [plaintiff's] injuries implicate[] the same set of concerns as the conduct alleged to have caused injury to other members of the putative class") (citation omitted); *Chen-Oster*, 877 F. Supp. 2d at 117 (rejecting motion to strike class allegations of company-wide discriminatory policy because defendant's arguments addressed Rule 23(a)(2)'s commonality requirement, "exactly the sort of issue that would be litigated and decided in the context of a motion for class certification"). A motion to strike class allegations is procedurally premature

unless it "addresses issues separate and apart from the issues that will be decided on a class certification motion." *Hidalgo*, 148 F. Supp. 3d at 292–93 (citation modified).

As a result, to prevail on a motion to strike class allegations at the pleading stage, "a defendant must demonstrate from the face of the complaint that it would be *impossible* to certify the alleged class *regardless* of the facts the plaintiffs may be able to obtain during discovery." *Goetz v. Ainsworth Pet Nutrition, LLC*, No. 24-CV-04799, 2025 WL 692426, at *2 (S.D.N.Y. Mar. 3, 2025) (citation omitted, emphasis added). Defendant's objections to Counts Four through Eight cannot meet this stringent standard.[10]

Moreover, as described in further detail below, the Complaint itself alleges a clear, common policy that applied equally to all class members. *See, e.g.*, *Kassman*, 925 F. Supp. 2d at 464 (motion to strike was premature because plaintiffs' allegation that "several specific headquarters-level policies resulted in discrimination" was enough to counter defendant's challenges to commonality); *Calibuso*, 893 F. Supp. 2d at 387–92 (same); *Chen–Oster*, 877 F. Supp. 2d at 118–19 (same); *Mazzola v. Roomster Corp.*, 849 F. Supp. 2d 395, 410 (S.D.N.Y. 2012) (motion to strike was premature, notwithstanding defendant's arguments that the proposed class definition "would require numerous individualized inquiries").

Further, to the extent Defendant is arguing that other Amazon employees will not be able to establish they have been harmed because of the policy in dispute (*see* Def. Br. At 20), those arguments are likewise premature prior to class discovery that will inform the ultimate class definition. As a litany of cases have concluded, such heavily fact-dependent questions are better

---

[10] It is thus unsurprising that all but one of the cases Defendant cites to argue that class treatment is inappropriate (*see* Def. Br. at 19) were resolved at the class certification stage or after the conclusion of discovery, and thus are inapplicable at this stage. *See Chedwick v. UPMC*, 263 F.R.D. 269, 271 (W.D. Pa. 2009) (denying defendant's summary judgment motion in ADA class action because "[i]t would be premature to dismiss [Plaintiff's] class action averments at this early stage"); *Cleary v. Whole Foods Mkt. Rocky Mountain/Southwest L.P.*, No. 15-CV-01247, 2016 WL 7048899, at *3 (D. Colo. Dec. 5, 2016) (denying defendant's motion to strike class allegations because "[w]ithout the benefit of discovery, Plaintiff has no means to know whether [a unified] class exists").

resolved where "a more complete factual record can aid the Court in making [its] determination" of the class's composition. *Mazzola*, 849 F. Supp. 2d at 410  (citation modified); *see also Hobbs v. Knight-Swift Transp. Holdings, Inc.*, No. 21 Civ. 1421, 2022 WL 118256, at *5–6 (S.D.N.Y. Jan. 12, 2022) (holding that arguments concerning whether certain members of proposed class could establish violations were premature and denying motion to strike class allegations); *Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993) (observing that "[a] court is not bound by the class definition proposed in the complaint and should not dismiss the action simply because the complaint seeks to define the class too broadly"); *see also In re Monumental Life Ins. Co.*, 365 F.3d 408, 414 (5th Cir. 2004) (observing that "holding plaintiffs to the plain language of their definition would ignore the ongoing refinement and give-and-take inherent in class action litigation, particularly in the formation of a workable class definition").

Thus, "where, as here, the defendant's arguments are indistinguishable from the issues that would be decided in the context of a motion for class certification, the motion is generally considered procedurally premature" and should be denied. *Herrick*, 2024 WL 1348754, at *4 (cleaned up).

2.  Plaintiff's Claims Are Suitable for Classwide Treatment.

Even if the Court were to accept Defendant's contention that a robust Rule 23 analysis is warranted at this juncture, Plaintiff has more than sufficiently pled her class claims.

a)  *Plaintiff has satisfied the commonality requirement set forth by Rule 23(a).*

Plaintiff's UPT Policy-based causes of action raise well-defined common questions that will generate common answers in satisfaction of Rule 23(a). Courts consistently find that claims such as Plaintiff's, which present civil rights challenges to unlawful policies, are susceptible to class treatment. *See Westchester Indep. Living Ctr., Inc. v. State Univ. of New York*, 331 F.R.D. 279, 292 (S.D.N.Y. 2019) (finding commonality requirement satisfied by "question of whether

Defendants ha[d] a policy or ha[d] otherwise in practice failed to take into account the needs of people with mobility disabilities," despite defendant's argument that some putative class members did not actually visit sites with barriers to access); *Shepard v. Rhea*, No. 12-CV-7220, 2014 WL 5801415, at *4 (S.D.N.Y. Nov. 7, 2014) ("When the plaintiff class seeks to enjoin a practice or policy, rather than individualized relief, commonality is assumed.") (collecting cases); *Brown v. Kelly*, 244 F.R.D. 222, 240 (S.D.N.Y. 2007) (affirming class certification because the "simple fact that [an unlawful policy] remains on the books and subject to statewide enforcement provides the requisite commonality"), *aff'd in part, vacated in part on other grounds*, 609 F.3d 467 (2d Cir. 2010). This is because "commonality does not mean that all issues must be identical as to each member." *Westchester*, 331 F.R.D. at 291 (citation omitted). As the Supreme Court observed in *Wal-Mart v. Dukes*, 564 U.S. 338 (2011), upon which Defendant relies, "even a single common question will do" to satisfy Rule 23(a)(2)'s requirements. *Id.* at 359.

In this case, Plaintiff has identified an admitted, centralized, statewide company policy of refusing to excuse absences protected by law. Common questions include whether the UPT Policy exists and how it operates; the answers to those questions will drive the resolution of the litigation. *See* Complaint ¶¶ 101–02. The answers can be located via common proof, including the content of written policies and procedures, training materials, and evidence of the policy's application via attendance and accommodation management systems. Application of the UPT Policy to proposed class members is the unambiguous and "common answer to the crucial question *why was I disfavored*." *Dukes*, 564 U.S. at 352 (emphasis in original). And proof of Plaintiff's claim that the policy violates her rights is equally applicable to other proposed class members, because its existence violates each of their rights, too.

22

Defendant protests that Plaintiff, one of thousands of warehouse workers uniformly subject to the UPT Policy throughout the state of New York, is somehow so unique that she cannot challenge Defendant's policy on behalf of a class. But Defendant's obfuscatory hodgepodge of factual references to individual managers' harassment, delay, and denial of accommodations is an attempt to confuse Plaintiff's policy-based claims (Counts Four through Eight) with Plaintiff's individual discrimination and retaliation claims (Counts One through Three). Plaintiff alleges that it is the company's policy categorically to refuse to excuse absences protected by applicable law. Complaint ¶ 4. This policy is centralized and its application does not depend on the discretion or discriminatory conduct of floor-level managers anywhere, much less at Plaintiff's specific worksite. *Id.* ¶ 38. She alleges that the UPT Policy's existence subverts the legal rights of New York employees who need disability accommodations to whom the policy applies. She alleges that the policy applies to any hourly New York logistics facility employee who seeks or intends to seek a disability accommodation from Amazon. *Id.* ¶¶ 28, 31. And she thus requests injunctive and declaratory relief to ensure the policy cannot continue to violate her and other employees' legal rights. That Plaintiff also suffered factually separate, individualized violations of the ADA and NYSHRL at her worksite does not negate her claims that the UPT Policy is unlawful as mechanically applied to her and to others.

> b) *Plaintiff has satisfied Rule 23(b)(2)'s requirements for a declaratory and injunctive relief class.*

Second, the injunctive relief Plaintiff seeks—chiefly, a modified policy that complies with applicable law—would provide relief to the entire class. Rule 23(b)(2) authorizes class actions where "'the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.'" *Sughrim*, 690 F. Supp. 3d at 392 (quoting Fed. R.

Civ. P. 23(b)(2)). "[C]ivil rights cases against parties charged with unlawful, class-based discrimination are prime examples" of Rule 23(b)(2) classes. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Courts in this Circuit and others have repeatedly affirmed that a class seeking to enjoin an unlawful policy applicable to its members can proceed under Rule 23(b)(2). *See*, *e.g.*, *Hill*, 136 F. Supp. 3d at 358 (certifying (b)(2) class because "[t]he requested injunctive relief, insofar as it seeks to enjoin these policies and to obtain a declaratory judgment, would remedy these alleged wrongs class-wide"); *Sughrim*, 690 F. Supp. 3d at 393 (certifying (b)(2) class challenging employer's practice of denying religious accommodations).

Importantly, in the disability rights context, a plaintiff need not establish that every single putative class member was identically harmed by an unlawful policy in order to enjoin it. Even where proposed class members "have diverse disabilities and will not all be affected by the alleged [failure to provide accommodation] the same way," injunctive relief in a case alleging systemic violations would "plainly benefit the proposed class as a whole." *Brooklyn Ctr. for Indep. of the Disabled*, 290 F.R.D. at 418–20*; see also Pappas v. D.C.*, No. CV 19-2800, 2024 WL 1111298, at *13–16 (D.D.C. Mar. 14, 2024) (to satisfy Rule 23(b)(2), "it is sufficient if class members complain of a pattern or practice that is generally applicable to the class as a whole, even if some class members have not been injured by the challenged practice" (cleaned up)); *Holmes v. Godinez*, 311 F.R.D. 177, 223 (N.D. Ill. 2015) (certifying (b)(2) ADA class because "[a] single declaration that the policies and practices alleged violate federal law would be final and would provide relief to each class member equally . . . regardless of the level of accommodation individual class members require").

Here, Plaintiff seeks to enjoin a workplace policy that penalizes absences protected by the ADA, NYSHRL, and NYLL. The relief sought implicates all proposed class members because

they are employees with disabilities who currently work under the violative policy. Defendant contends that Plaintiff's class definition is overbroad because it "includes a large number of employees who could not have been injured," *i.e.* fired or disciplined, pursuant to its unlawful policy. *See* Def. Br. at 2, 20. But these are not the only injuries sufficient to implicate the causes of action charged in the Complaint. Rather, the Complaint explains how Defendant's UPT policy violates the rights of all class members under the ADA, NYSHRL, and NYLL by denying them effective accommodations. *See* Complaint ¶¶ 10–13, 37. Moreover, Plaintiff has explicitly charged classwide violations of the ADA's anti-interference provision, a section of the statute which definitionally does not require that injured employees were fired or disciplined. *See id.* ¶¶ 161–66. Thus, Defendant's attendance policy applies to the entire proposed class and could immediately be modified to provide the entire proposed class with relief. *See* Complaint ¶ 39. Accordingly, Defendant is wrong to conclude that a class action cannot proceed because some proposed class members were not identically affected by the policy.

c) *Individualized questions as to "qualification" do not preclude classwide treatment.*

Defendant next argues that Plaintiff's claims are inappropriate for classwide treatment because the ADA's applicability depends on purported individualized inquiries regarding whether employees are "qualified." If individual questions about the ADA's applicability precluded commonality, there could never be a class action in an ADA accommodation case. But courts have repeatedly certified classes, including in ADA accommodation cases, where not all individual facts are identical, particularly where the proposed class seeks only injunctive relief. *See, e.g.*, *Brooklyn Ctr. for Indep. of the Disabled v. Metro. Transportation Auth.*, 11 F.4th 55, 60 (2d Cir. 2021) (noting that class of disabled subway riders was certified below); *Lacy v. Cook Cnty.*, 897 F.3d 847, 866 n.38 (7th Cir. 2018) ("We note that many courts have certified classes

25

based on allegedly unreasonable accommodations."); *Lane v. Kitzhaber*, 283 F.R.D. 587, 596 (D. Or. 2012) ("after *Wal-Mart*, several courts have certified class actions in ADA or Rehabilitation Act cases") (collecting cases).

Indeed, courts have certified injunctive and declaratory relief classes in cases similar to this one, alleging discriminatory employment policies that violate the ADA. *See Pappas*, 2024 WL 1111298, at *5 (certifying class of police officers with disabilities alleging city maintained a policy of failing to provide accommodations because a "common question—and answer—may exist despite the requirement of some individual determinations"); *Bates*, 511 F.3d at 446 (finding common issues notwithstanding some individual inquiries because plaintiffs challenged defendant's accommodation process); *Hendricks-Robinson v. Excel Corp.*, 164 F.R.D. 667, 670 (C.D. Ill. 1996) (certifying a disability discrimination class of employees terminated pursuant to an official "medical layoff policy" because each was subject to policy despite individual injuries). As the Second Circuit has explained: "Common issues—such as liability—may be certified, consistent with Rule 23, even where other issues—such as damages—do not lend themselves to classwide proof. *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 138 (2d Cir. 2015).[11]

Defendant heavily relies on *Hohider v. UPS*, 574 F.3d 169, 196 (3d Cir. 2009), an out-of-circuit, factually and procedurally dissimilar decision in which the court decertified a putative ADA class. The Court in *Hohider*, however, did not foreclose certification of ADA classes as a matter of law. Indeed, the Third Circuit recognized that an ADA class could be certified if it had basic "unifying or limiting criteria," such as "conditions suffered, or accommodations sought." *Id.* at 189. Subsequently, courts within the Third Circuit have declined to construe *Hohider* to

---

[11] *Johnson* declined to certify the class, at the class certification stage, based on the more stringent Rule 23(b)(3) requirement of superiority, which is not required in this injunctive relief case. *Id.*

mean that ADA classwide litigation can never proceed. *See Chedwick v. UPMC*, 263 F.R.D. 269, 277 (W.D. Pa. 2009) (denying summary judgment, holding defendant's challenge was "premised on an overbroad reading of *Hohider*, without reference to the factual circumstances or evidentiary record of [the instant] case"); *EEOC v. FedEx Ground Package Sys., Inc.*, 158 F. Supp. 3d 393, 401–02 (W.D. Pa. 2016) (finding *Hohider* inapplicable under dissimilar facts).[12]

More fundamentally, unlike in *Hohider*, the class claims here do not turn on "qualification." The ADA's anti-retaliation protections apply to anyone who engages in the "protected activity" of requesting an accommodation, regardless of whether they ultimately qualify for the accommodation. *See* 42 U.S.C. § 12203(a). The ADA's anti-interference provision similarly prohibits conduct that interferes with the exercise or enjoyment of ADA rights, whether or not the affected employees were otherwise covered by the ADA. *See id.* § 12203(b). Thus, members of the proposed class were and continue to be injured regardless of their right to reasonable accommodation, and can make out common claims generating common relief. Further, the proposed class puts forth "unifying criteria" as to its requests for accommodation. *Hohider*, 574 F.3d at 189. The interim accommodation all proposed class members need when requesting disability accommodations is *excused absences* while Defendant makes them wait for approval of their ultimate requests. The UPT Policy denies that accommodation across the board. Thus, no extensive individualized analysis is needed to find that the UPT Policy, as written, violates the ADA, NYSHRL, and NYLL.

---

[12] Other non-Third Circuit cases Defendant cites in asking this court to categorically preclude ADA class litigation are so specific to their facts that they are even less applicable. *See, e.g., Heggs*, 2023 WL 9786044, at *22 (*non-employment, non-policy* case alleging mistreatment of individuals with mobility disabilities by police); *Blatch ex rel. Clay v. Hernandez*, 360 F. Supp. 2d 595, 636 (S.D.N.Y. 2005) ("the question is whether mental impairments limit major life activities").

## **CONCLUSION**

For the reasons set forth above, Amazon's motion should be denied in its entirety.


Dated: February 19, 2026                    Respectfully Submitted,


Katherine Greenberg
Shyamala Ramakrishna
**A BETTER BALANCE**
500 7th Avenue, 8th Floor
New York, NY 10018
Phone: 212-430-5982
Email: kgreenberg@abetterbalance.org
          sramakrishna@abetterbalance.org


*/s/ Maia Goodell*
Maia Goodell
**VLADECK, RASKIN & CLARK P.C.**
111 Broadway, Suite 1505
New York, NY 10006
Phone: (212) 403-7300
Email: mgoodell@vladeck.com


*Attorneys for Plaintiff*

**LOCAL CIVIL RULE 7.1(C) CERTIFICATION**

I hereby certify that the foregoing Memorandum of Law In Support of Plaintiff's Opposition to Defendant's Motion to Dismiss complies with the word-count limitations set forth in Local Civil Rule 7.1(c) and the Court's Individual Practices in Civil Cases Rule 4(b). This Memorandum of Law contains 8,697 words.

**CERTIFICATE OF SERVICE**

I hereby certify that on February 19, 2026, I caused a true and correct copy of Plaintiff's Opposition to Amazon.com Services, LLC's Motion to Dismiss Plaintiff's Complaint to be served upon counsel of record via the ECF system.