UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------------------X
CAYLA LYSTER, on behalf of herself and all      :
persons similarly situated,                      :
                                                 :
                                                 :
                                                 :
                              Plaintiff,         :
                                                 :          25-CV-09423 (VEC)
                -against-                         :
                                                 :          OPINION & ORDER
AMAZON.COM SERVICES, LLC,                         :
                                                 :
                                                 :
                                                 :
                              Defendant.         :
-------------------------------------------------------------X
```

VALERIE CAPRONI, United States District Judge:

Plaintiff Cayla Lyster, an employee of Defendant Amazon.com Services, LLC ("Amazon"), claims that Defendant's policy for monitoring and disciplining absences discriminates against employees with disabilities. *See* Complaint, Dkt. 1 ("Compl."). She brings claims for disability discrimination, retaliation, and unlawful interference pursuant to the American with Disabilities Act, 42 U.S.C. § 12101 *et seq*. ("ADA"), New York Human State Rights Law, N.Y. Exec. L. § 296 *et seq*. ("NYSHRL"), and Section 215(1)(a) of the New York Labor Law. Defendant moved to dismiss the Fourth through Eighth Causes of Action. *See* Mot. to Dismiss, Dkt. 20 (the "Motion" or "Mot."); Def. Mem. of Law in Support of Mot., Dkt. 21 ("Def. Mem."). Plaintiff opposed. *See* Opposition to Mot., Dkt. 24 ("Opp."). The Motion is GRANTED IN PART and DENIED IN PART.

### BACKGROUND[1]

Defendant Amazon operates hundreds of logistics facilities, including over thirty in New York State.  Compl. ¶¶ 2, 25.  When an hourly employee begins working at a logistics facility, they are given a bank of Unpaid Time Off ("UPT") hours.  *Id.* ¶ 28.  Pursuant to company policy (the "UPT Policy"), UPT is automatically deducted from an employee's balance whenever he or she is late or absent from work without prior authorization.  *Id.*  When an employee's balance of UPT is depleted, the employee enters "negative UPT."  *Id.* ¶ 29. Upon entering negative UPT, Defendant sends the employee an automatically-generated email warning that if the employee is unable to satisfactorily explain his or her absences within 48 hours, the employee may be subject to termination or other discipline.  *Id.*

Plaintiff has been an hourly worker at one of Defendant's logistics facilities since 2022. *Id.* ¶ 41.  She has been diagnosed with Ehlers-Danlos syndrome, a permanent genetic connective-tissue disorder.  *Id.* ¶¶ 43–45.  In mid- to late 2023, Defendant transferred Plaintiff into a department that required her to perform tasks that she was unable to perform due to her disability.  *Id.* ¶¶ 48–51.  She filed a request for a disability-related accommodation in November 2023 and identified a department in which she believed she would be able to work. *Id.* ¶ 52.

Although work was available in the department that Plaintiff suggested, Defendant "abruptly and inexplicably forced [Plaintiff] to stop working and stay home, unpaid, while awaiting the outcome of her accommodation request."  *Id.* ¶ 53.  During this period, Defendant

---

[1]     The Court assumes the truth of the well-pled factual allegations in the Complaint for purposes of deciding this Motion.  *See Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019).  Because this Motion concerns only the class-wide allegations, the Court omits from the Background section any alleged facts that are relevant only to Plaintiff's individual claims.

informed Plaintiff that if she failed to report to work, UPT would be deducted and she could be terminated. *Id.* ¶ 55. To avoid that outcome, Plaintiff "physically reported to her worksite and swiped her badge into the building to avoid being deducted UPT," only to be "immediately sent home." *Id.* That strategy allowed Plaintiff to avoid having UPT deducted, although she was not paid for her time. *Id.* ¶ 56.

After approximately one month of unpaid leave, Defendant allowed Plaintiff to return to work in the department she had identified in her accommodation request. *Id.* ¶ 57. She worked in that department for approximately six months, at which point she was informed that her accommodation request was "coming up for review" and that "she would need to submit new medical documentation as a result." *Id.* ¶ 59. Plaintiff submitted the requested documentation. *Id.* ¶ 64.

Shortly thereafter, Defendant informed Plaintiff that she would be transferred to another department; in Plaintiff's view, that transfer would require her to perform tasks that were incompatible with her accommodations. *Id.* ¶¶ 65–66. Defendant further informed her that if she was unable to work in that department, she would be placed on leave. *Id.* ¶ 65. Plaintiff continued to report to work and performed tasks she was able to perform. *Id.* ¶ 69. She also made another accommodation request, for which she submitted further medical documentation showing that the department to which she had been assigned did not meet her accommodation needs. *Id.* ¶ 70.

Thirteen days after she made that request, Defendant once again "forced [Plaintiff] off the job;" she was on unpaid leave for more than five weeks. *Id.* ¶¶ 72–73. During that time, Defendant deducted UPT from Plaintiff's balance and repeatedly threatened to fire her if she

failed to report to work.  *Id.* ¶ 73.  Defendant ultimately brought Plaintiff back to work and reassigned her to a position that met her accommodation needs.  *Id.* ¶ 77.

According to Plaintiff, her experience is typical of other employees who, upon requesting an accommodation for a disability, are "forced off the job" by Defendant while their requests are pending.  *Id.* ¶¶ 31–32.  Although the UPT Policy provides that Defendant "does not deduct UPT when absences are covered by paid time off, one of [its] leave of absence (LOA) policies, Accommodations Policy, or applicable law," *id.* ¶ 30, Plaintiff alleges that, in reality, Defendant "enforce[s] a policy of deducting UPT from all employees who do not have banked leave—including those who are not working because they have pending requests for reasonable accommodations," *id.* ¶ 31.

In November 2025, Plaintiff filed this action on behalf of herself and a putative class consisting of "[a]ll persons employed by Amazon in its logistics facilities in New York State as hourly workers [during the relevant time period] . . . who sought or intended to seek a disability accommodation from Amazon."  *Id.* ¶ 98.  Plaintiff brought various claims, including, of relevance here, disability discrimination in violation of the ADA and NYSHRL, *id.* ¶¶ 134–49, unlawful retaliation in violation of the ADA and Section 215 of the New York Labor Law, *id.* ¶¶ 150–58, 168–74, and unlawful interference in violation of the ADA, *id.* ¶¶ 159–67.  Defendant moved to dismiss those claims brought on behalf of the putative class.  *See* Mot. Plaintiff opposed.  *See* Opp.

## DISCUSSION

On a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the court considers "whether the complaint contains 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Gamm v.*

*Sanderson Farms, Inc.*, 944 F.3d 455, 462 (2d Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  The Court "accept[s] all factual claims in the complaint as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010).  The Court, however, need not credit conclusory allegations. *See In re Optionable Sec. Litig.*, 577 F. Supp. 2d 681, 690–92 (S.D.N.Y. 2008).

## I.      Plaintiff Has Standing to Seek Injunctive Relief

Pursuant to Article III of the Constitution, federal courts may only hear "[c]ases" and "[c]ontroversies." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 576 (1992).  To ensure that a case or controversy exists, the Court must make a threshold determination whether the plaintiff has standing to sue. *Id*. at 560–61.  To establish standing at the motion to dismiss phase, a plaintiff must allege: (1) a concrete, particularized, actual or imminent injury-in-fact; (2) a causal connection between the injury and the conduct complained of such that the injury is fairly traceable to the challenged action of the defendant; and (3) facts sufficient to support the inference that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision" from the Court. *Id*. (internal quotation marks omitted).  Although the Court "generally accept[s] the truth of a plaintiff's allegations at the motion to dismiss stage, the plaintiff still bears the burden of alleging facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue." *Calcano v. Swarovski N. Am. Ltd*., 36 F.4th 68, 75 (2d Cir. 2022) (cleaned up).  If a plaintiff lacks standing, the claim must be dismissed for lack of subject matter jurisdiction. *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C*., 433 F.3d 181, 198 (2d Cir. 2005).

Defendant does not dispute that Plaintiff has standing to seek money damages; it argues only that Plaintiff lacks standing to seek injunctive relief on behalf of herself and the putative class.  To establish standing to seek an injunction, a plaintiff must show that there is a risk of

5

continuing or future harm; past exposure to illegal conduct is insufficient to satisfy the injury-in-fact requirement.  *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983).  The plaintiff must also plead facts from which the Court can infer that she is "immediately in danger of sustaining some direct injury" as a result of the defendant's conduct.  *Valley Forge Christian College v. American United for Separation of Church and State, Inc.*, 454 U.S. 464, 477 (1984) (citation omitted).  Injuries that are merely "conjectural or hypothetical" are insufficient.  *Lyons*, 461 U.S. at 102 (internal quotation marks omitted).  "In a class action, once standing is established for a named plaintiff, standing is established for the entire class."  *Hyland v. Navient Corp.*, 48 F.4th 110, 118 (2d Cir. 2022) (citation and internal quotation marks omitted).

Plaintiff has standing to seek injunctive relief because she alleges that the UPT Policy has been enforced against her in the past, is likely to be enforced in the future, and remains Defendant's official protocol for dealing with employees who request disability accommodations.  Plaintiff's fear that she may have UPT automatically deducted in the future is not conjectural or hypothetical; she alleges that she has been subjected to the UPT Policy as recently as June 2024 when Defendant placed her on leave in order to review an accommodation request.  *Id.* ¶¶ 70–71.  Notably, the June 2024 accommodation request was Plaintiff's second such request; she made it only after Defendant transferred her to a department that did not meet her previously granted accommodations.  *Id.* ¶¶ 59–60.  Defendant's conduct suggests that Plaintiff and similarly-situated employees may be required repeatedly to seek accommodations, meaning that they remain at imminent risk of having UPT automatically deducted when Defendant "force[s]" them "off the job" while it reviews their requests.  Compl. ¶ 32.

Defendant's argument that Plaintiff lacks standing relies heavily on this Court's decision in *Pinckney v. Carroll*, No. 18-CV-12198 (VEC), 2019 WL 6619484 (S.D.N.Y. Dec. 4, 2019). That case involved a plaintiff whose Section 8 housing benefits had been terminated after she and her mother, with whom she lived, failed to complete paperwork to certify their continuing eligibility for benefits. *Id.* at *1–*2. The plaintiff, who suffered from psychological disabilities that she claimed made it difficult for her to comply with deadlines, sought injunctive relief to require the housing agency to provide her with reasonable accommodations in the future. *Id.* at *4. The Court noted that the plaintiff's Section 8 benefits had been reinstated and that future injury would occur only if (1) the plaintiff required an accommodation, (2) she failed to request one or the housing agency failed to provide one, and (3) she failed to comply with the recertification requirements as a result. *Id.* Finding that "chain of possibilities" to be "speculative and hypothetical," the Court concluded that the plaintiff lacked standing to seek injunctive relief. *Id.* at *5.

The risk of future harm that Plaintiff has alleged in this case is far more concrete than that in *Pinckney*. In *Pinckney*, the plaintiff's alleged injury would occur only if *all* of the circumstances that gave rise to the injury — which had materialized only once before, and which were only partially within either party's control — were to arise again. Here, by contrast, Plaintiff has alleged that Defendant has unilaterally revoked her accommodations in the past without notice or explanation, and that Defendant has required her to renew her accommodation request even after she had provided evidence that her disability was permanent and her need for accommodations was ongoing. Compl. ¶¶ 53, 65–67, 71. Unlike in *Pinckney*, where the risk of future injury "rest[ed] on a speculative chain of possibilities," Plaintiff is likely to suffer the harms associated with being placed on unpaid leave as soon as she requests

an accommodation; given the permanence of her disability, the need to make such a request could arise at any time. *Pinckney*, 2019 WL 6619484, at \*5 (internal quotation marks omitted). That risk of future injury is sufficiently concrete to establish standing. *See Hill v. City of New York*, 136 F. Supp. 3d 304, 359–60 (E.D.N.Y. 2015), *order amended and supplemented*, No. 13CV6147PKCJO, 2019 WL 1900503 (E.D.N.Y. Apr. 29, 2019) (employees had standing to challenge discriminatory workplace policies where the policies were "part of the overall pattern or practice" in the unit and the employees had reason to believe they are "likely to be subject to the challenged unlawful policies again").

## II. Plaintiff Fails to State Class-Wide Claims of Disability Discrimination Pursuant to the ADA and the NYSHRL

Defendant has moved to dismiss Plaintiff's class-wide claims for disability discrimination pursuant to the ADA and the NYSHRL. Before considering the merits, the Court notes the exceedingly narrow scope of those claims. Although Plaintiff alleges that class members are temporarily "forced off the job" for "merely request[ing] accommodations," Compl. ¶¶ 32–33, she does not assert that practice constitutes disability discrimination in and of itself. Rather, the class-wide claims focus solely on the UPT Policy; that is, she challenges Defendant's alleged practice of "deducting UPT from employees in the Proposed Class while they await[] approval of their accommodations." *Id.* ¶ 138. The question for the Court on this Motion is whether that practice — *not* the practice of placing on unpaid leave employees who request accommodations — is a form of disability discrimination within the meaning of the ADA or the NYSHRL.

"A plaintiff alleging disability discrimination can base her claim on any of three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *Brooklyn Ctr. for Psychotherapy, Inc. v.*

*Philadelphia Indem. Ins. Co.*, 955 F.3d 305, 311 (2d Cir. 2020) (cleaned up).[2]  The Court considers in turn the two theories about which the parties present argument: intentional discrimination and failure to accommodate.

To state an ADA claim of disability discrimination pursuant to an intentional discrimination or "disparate treatment" theory, the Plaintiff must allege that "(1) the employer is subject to the ADA; (2) the plaintiff is disabled within the meaning of the ADA or perceived to be so by her employer; (3) she was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (4) she suffered an adverse employment action; and (5) the adverse action was imposed because of her disability."  *Davis v. New York City Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015).  The final element requires the Plaintiff to allege that the adverse employment action "took place under circumstances giving rise to an inference of discrimination."  *Id.*  "New York State disability discrimination claims are governed by the same legal standards as federal ADA claims."  *Brown v. New York City Dep't of Educ.*, 806 F. App'x 45, 49 (2d Cir. 2020) (quoting *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 117 n.1 (2d Cir. 2004)).

Defendant argues that the Complaint does not contain any allegations from which the Court can plausibly infer that Defendant acted with an intent to discriminate.  Defendant notes, for example, that the UPT Policy applies to all employees who are absent from work regardless of whether they are disabled or are seeking an accommodation, *see* Compl. ¶¶ 3, 28–31, and that Defendant sends emails warning employees that unexcused absences may result in termination to all employees who deplete their UPT balances regardless of disability status, *id.*

---

[2]    The Second Circuit has also recognized disability discrimination claims sounding in a hostile work environment theory, *see Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 74 (2d Cir. 2019), but neither party argues that here.

¶¶ 29, 34.  Plaintiff does not meaningfully dispute that she fails to plead a disparate treatment theory of discrimination with respect to the class wide-claims; in fact, she disavows the theory and asserts that she intends only to raise a failure-to-accommodate claim.  *See* Opp. at 8.  The Court agrees that the uniform nature of the UPT Policy, both in its terms and in its application, undercuts any plausible inference of intentional discrimination.

To state a *prima facie* claim of ADA disability discrimination based upon a failure to accommodate, the complaint must allege:

> (1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.

*Tafolla v. Heilig*, 80 F.4th 111, 118–19 (2d Cir. 2023).  The same standard applies to NYSHRL failure to accommodate claims.  *Noll v. Int'l Bus. Machines Corp*., 787 F.3d 89, 94 (2d Cir. 2015).  "The ADA and the NYSHRL require an employer to afford reasonable accommodation of an employee's known disability unless the accommodation would impose an undue hardship on the employer."  *Id.*

The UPT Policy does not support a claim of disability discrimination pursuant to a failure-to-accommodate theory.  The key question in a failure-to-accommodate case is whether an accommodation would enable the Plaintiff (or, in this case, members of the putative class) to "perform the essential functions of the job at issue."  *Tafolla*, 80 F.4th at 118; *see also Slater v. NYU Langone Health Sys*., No. 24-CV-03711 (OEM) (SIL), 2025 WL 2208292, at *5 (E.D.N.Y. Aug. 4, 2025) (primary issue in a failure-to-accommodate claim is whether "the plaintiff could perform her job duties if she received . . . an accommodation").[3]  The

---

[3]     EEOC regulations also provide that the purpose of an accommodation is to "enable an individual with a disability who is qualified to perform the essential functions of that position" or "to enjoy equal benefits and privileges of employment as are enjoyed by its other similarly situated employees without disabilities."  29 C.F.R.

accommodation that Plaintiff proposes is not designed to help employees perform their jobs, but, rather, to protect them from certain consequences that they may incur if they are absent from work. *See* Compl. ¶ 39 (alleging that the harms of the challenged UPT Policy may be ameliorated if Defendant "[c]hang[ed] [its] attendance system to prevent UPT from automatically being applied to legally protected absences" or "[t]rain[ed] staff to adjust employees' attendance records in accordance with applicable law"). Put differently, the alleged failure to accommodate concerns how Defendant treats employees when they are *not* working, not how to accommodate them when they *are* working.

At base, the purported harm of the UPT Policy is not that it denies disabled employees access to something that is available to non-disabled employees but that it has the effect of "systematically penaliz[ing]" disabled employees who request accommodations. Compl. ¶¶ 138, 146. That argument tracks, at least superficially, with a disparate impact theory of discrimination, inasmuch as it describes a "facially neutral" workplace policy that has "a significantly adverse or disproportionate impact" on people with disabilities. *B.C. v. Mount Vernon Sch. Dist.*, 837 F.3d 152, 158 (2d Cir. 2016). The Complaint does not, however, support a failure-to-accommodate theory because it does not allege facts that allow the Court plausibly to infer that the UPT Policy makes it "difficult [for disabled employees] to access benefits to which [they are] legally entitled." *Brooklyn Ctr. for Psychotherapy*, 955 F.3d at

---

§ 1630.2(*o*)(1)(ii), (iii). Plaintiff suggests in her Opposition that Defendant's policy of deducting UPT from employees who seek disability accommodations deprives those employees of the equal benefits and privileges of employment. Opp. at 11. But courts in this Circuit generally interpret the phrase "benefits and privileges," as used in the regulations, to refer to "services and programs provided in connection with employment, and to all non-work facilities provided or maintained by an employer for use by its employees[,] . . . [including] employer provided cafeterias, lounges, gymnasiums, auditoriums, transportation and the like." *Noll*, 787 F.3d at 94–95 (quoting 29 C.F.R. § 1630 app.); *see, e.g.*, *Cadoret v. Sikorsky Aircraft Corp.*, 323 F. Supp. 3d 319, 326 (D. Conn. 2018) ("[T]here is a triable issue of fact with respect to whether Plaintiff [who is deaf] required an ASL interpreter to access meetings and trainings in the workplace in order to receive equal benefits and privileges of employment."). The UPT Policy is neither a service nor a program provided to employees; it is simply an internal system for tracking and disciplining unexcused employee absences.

311–12 (quoting *Henrietta D. v. Bloomberg*, 331 F.3d 261, 277, 273 (2d Cir. 2003)) (cleaned up); *see also Davis v. Wild Friends Foods, Inc*., No. 22-CV-04244 (LJL), 2023 WL 4364465, at *8 n.3 (S.D.N.Y. July 5, 2023) ("The important difference between [an accommodation claim and a disparate impact claim] is that a reasonable accommodation claim is focused on an accommodation based on an individualized request or need, while a reasonable modification in response to a disparate impact finding is focused on modifying a policy or practice to improve systemic accessibility." (quoting *Payan v. Los Angeles Cmty. Coll. Dist*., 11 F.4th 729, 738 (9th Cir. 2021)).[4]

In short, Plaintiff has failed to state a claim of disability discrimination premised on a failure to accommodate.

---

[4] Neither party has proposed that the Court construe Plaintiff's disability discrimination claim pursuant to a disparate impact theory. Even if either did, however, the Complaint would likely still fail to state a claim. To allege a *prima facie* case of discrimination pursuant to a disparate impact theory, "the plaintiff must show: (1) the occurrence of certain outwardly neutral practices, and (2) a significantly adverse or disproportionate impact on persons of a particular type produced by the defendant's facially neutral acts or practices." *McCulloch v. Town of Milan*, 559 F. App'x 96, 99 (2d Cir. 2014) (quoting *Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 52–53 (2d Cir. 2002)). As an initial matter, it is not clear what "impact' Plaintiff claims the UPT Policy had on putative class members. Although Plaintiff alleges that employees who entered negative UPT received "threatening disciplinary communications" in which they were told that they may be terminated if they could not explain their absences, she does not allege that any members of the putative class actually *were* terminated or subjected to unfavorable treatment when they entered negative UPT. Compl. ¶ 155. The closest Plaintiff comes to claiming as much is when she alleges that she and her colleagues were nervous about running out of UPT because they knew employees who "ha[d] in fact been fired for their negative UPT status pursuant to Amazon's disciplinary policy, despite their attempts to communicate with Amazon about their absences." *Id.* ¶ 37. Plaintiff does not allege, however, that any of those employees entered negative UPT *because* they were put on leave for requesting accommodation for a disability. Instead, she simply observes that Defendant has fired employees for unexcused absences, a not-unusual situation in any workplace. It is also unclear whether or how the "impact" of the UPT Policy — whatever that may be — was "disparate." Plaintiff concedes that the UPT Policy applies to all employees and that all employees who deplete their UPT balances receive emails mentioning the possibility of termination. *See id.* ¶¶ 3, 28–31, 34. Although the Complaint refers to the "perpetual fear" that disabled employees experienced as a result of the UPT Policy, nothing in the Complaint suggests that the experiences of other employees (for example, employees placed on leave for reasons other than the fact that they requested disability accommodations) were any different. *Id.* ¶ 37.

12

### III.   Plaintiff States Class-Wide Claims for Retaliation Pursuant to the ADA and Section 215 of the New York Labor Law

Plaintiff also brings retaliation claims pursuant to the ADA and Section 215(1)(a) of the New York Labor Law.  To state a claim of unlawful retaliation pursuant to the ADA, a plaintiff must allege that "(1) [she] was engaged in an activity protected by the ADA, (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action."  *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999).  Likewise, to state a claim of retaliation pursuant to Section 215, the plaintiff must allege "(1) participation in protected activity known to the defendant . . . ; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action."  *Zhang v. Centene Mgmt. Co., LLC*, No. 21 CV 5313 (DG) (CLP), 2023 WL 2969309, at *11 (E.D.N.Y. Feb. 2, 2023).

Defendant's Motion challenges only the final element — the causal connection between the protected activity (seeking disability-related accommodations) and Defendant's adverse action (deducting UPT during the period when employees are barred from the workplace while their requests are under review).  To allege adequately causation at the motion to dismiss phase, the plaintiff must allege facts from which the Court may infer "that the retaliation was a 'but-for' cause of the employer's adverse action."  *Mehta v. City of New York*, No. 19-CV-03857-NG-VMS, 2022 WL 280460, at *7 (E.D.N.Y. Jan. 31, 2022) (collecting cases).[5]  "A causal

---

[5]     Because the language regarding causation in Section 215 of the New York Labor Law is materially identical to the language in the ADA, the Court concludes that the same standard for causation applies to both. *Compare* N.Y. Lab. Law § 215(1)(a)(i) ("No employer . . . shall . . . retaliate against any employee . . . *because* such employee has made a complaint to his or her employer . . . ." (emphasis added)); *with* 42 U.S.C. § 12203(a) ("No person shall discriminate against any individual *because* such individual has opposed any act or practice made unlawful by this chapter . . . ." (emphasis added)).  The Court disagrees with Plaintiff's assertion that a 2023 amendment to Section 215, which defined "deductions from an allotted bank of time" as a potentially unlawful penalty, altered the causation requirement.  That language simply clarified that such deductions may qualify as

connection in retaliation claims can be shown either (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Littlejohn v. City of New York*, 795 F.3d 297, 319 (2d Cir. 2015) (internal quotation marks omitted).

Again, the Court notes the narrow nature of Plaintiff's class-wide retaliation claim. Plaintiff does not allege that Defendant's policy of placing employees on unpaid leave when they request an accommodation is itself retaliatory; rather, she argues that, because the UPT Policy "levies attendance penalties on employees *as a consequence of* their disability accommodation requests," Defendant "retaliates against employees who request disability accommodations." Opp. at 12 (emphasis in original). Put otherwise, the *only* adverse employment action that Plaintiff challenges as retaliatory is Defendant's decision to deduct employees' UPT while they are out of the workplace while their accommodation requests are under review, *not* Defendant's decision, in the first instance, to place employees on leave while their accommodation requests are being considered.

Plaintiff's theory of causation with respect to the class-wide retaliation claims rests entirely on temporal proximity: employees are required to take leave when they request disability accommodations (or when Defendant requests information about employees' existing accommodations), at which point they begin losing banked UPT. In Plaintiff's case, when she submitted additional documentation to support her accommodation request in June 2024, she

---

efforts "to threaten, penalize, or in any other manner discriminate or retaliate against any employee" within Section 215's proscription. N.Y.L.L. § 215(1)(a). It does not follow that any and all such deductions are discriminatory or retaliatory *per se*.

was "needlessly forced off the job" just thirteen days later, giving rise to deductions from her UPT. *See* Compl. ¶¶ 70–73.[6] That is a short enough time between the protected activity and the adverse action to give rise to an inference of causation. *See Cayemittes v. City of New York Dep't of Hous. Pres. & Dev.*, 974 F. Supp. 2d 240, 263 (S.D.N.Y. 2013), *aff'd*, 641 F. App'x 60 (2d Cir. 2016) (collecting cases for the proposition that the passage of more than two to three months between the protected activity and the adverse employment action is generally the outer limit for an inference of causation supported only by temporal proximity). Accordingly, Plaintiff has stated a *prima facie* case of retaliation.

Defendant argues that Plaintiff fails to state a claim of retaliation because she "concedes the UPT policy applied to her because she was absent from work, not because she had a disability or requested an accommodation." Def. Mem. at 14. That argument misapprehends the but-for standard of causation. Plaintiff does not need to allege that retaliation was "the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of retaliatory motive." *Mehta*, 2022 WL 280460, at \*7 (quoting *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013)). Here, Plaintiff has alleged that Defendant "forced [employees] off the job" for requesting accommodations, meaning that the absences that triggered the UPT deductions would not have occurred had the employees not engaged in protected activity. Compl. ¶ 32. It is not relevant, for the purpose of the *prima facie inquiry*, that employees would have incurred similar deductions if they had been absent

---

[6]     When Plaintiff first requested an accommodation in November 2023, she "physically reported to her worksite and swiped her badge into the building to avoid being deducted UPT." Compl. ¶ 55. Although she suffered other harms as a result of being denied work once she arrived at the building, *i.e.*, she "was not paid," no UPT was deducted. *Id.* ¶ 56. Whatever injuries she suffered during that period, therefore, are not the injuries for which she seeks class-wide relief.

for other reasons; what matters is that putative class members were absent because they engaged in protected activity.

To the extent Defendant intends to argue that the general applicability of the UPT Policy undercuts any inference of discriminatory motive, that argument is inappropriate at the motion to dismiss stage, where the burden to establish "a *prima facie* case of retaliation is '*de minimis.*'" *Duplan v. City of New York*, 888 F.3d 612, 626 (2d Cir. 2018) (quoting *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010)).  On summary judgment, the burden will shift to Defendant to rebut the *prima facie* case by providing a non-discriminatory explanation for the decision to deduct UPT.  *Zann Kwan*, 737 F.3d at 845.  Once it does, the burden will shift again to Plaintiff to provide evidence that Defendant's proffered explanation is pretextual — and "[t]emporal proximity alone is insufficient to defeat summary judgment at the pretext stage." *Id.* at 847.  At this early stage, however, the temporal proximity between employees' protected conduct and Defendant's adverse action is sufficient to plead the requisite causal connection to state a claim for retaliation.  *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010).

## IV.    Plaintiff States a Claim for Unlawful Interference Pursuant to the ADA

Plaintiff alleges unlawful interference pursuant to the ADA.  That provision makes it

unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

42 U.S.C. § 12203(b).  "Neither the Supreme Court nor the Second Circuit has yet outlined a legal test for an interference claim under the ADA," *Equal Emp. Opportunity Comm'n v. Day & Zimmerman NPS, Inc.*, 265 F. Supp. 3d 179, 204 (D. Conn. 2017), although the Second Circuit has permitted such claims to move forward in cases where an ADA retaliation claim has survived a motion to dismiss or a motion for summary judgment.  *See, e.g.*, *Witcher v. New*

16

*York City Dep't of Educ.*, No. 23-465, 2024 WL 3220264, at *3 (2d Cir. June 28, 2024); *Lovejoy–Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223–25 (2d Cir. 2001). Accordingly, because Plaintiff's class-wide retaliation claim has survived, her unlawful interference claim must also survive.

### V.     The Court Declines to Consider Defendant's Rule 23 Arguments at this Time

Finally, Defendant argues that the Court should dismiss Plaintiff's class-wide claims pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(2), reasoning that the Complaint's excessive focus on Plaintiff's individual claims, including interactions with her manager that purportedly demonstrate animus, "demonstrate[s] that Plaintiff does not hold her claims in common with the proposed class." Def. Mem. at 15. The Court has already dismissed the class-wide discrimination claims on the merits, so it considers this argument as applied to the class-wide retaliation claims only.

"[D]istrict courts in this Circuit have frequently found that a determination of whether the Rule 23 requirements are met is more properly deferred to the class certification stage, where a more complete factual record can aid the court in making this determination," than at the motion to dismiss stage. *Winfield v. Citibank, N.A.*, 842 F. Supp. 2d 560, 573 (S.D.N.Y. 2012) (collecting cases). The Court sees no reason to deviate from that norm here, particularly because the Court has already analyzed Plaintiff's surviving class-wide retaliation claim without reference to Plaintiff's individual complaints about her manager.

### CONCLUSION

For the foregoing reasons, the Motion is GRANTED IN PART and DENIED IN PART. The Clerk of Court is respectfully directed to terminate the open motion at Dkt. 20.

Prior to the July 10, 2026, conference, the parties must meet and confer and be prepared to discuss at the conference their plan for completing discovery. If Plaintiff wishes to seek

17

leave to amend the Complaint to address the deficiencies described in this opinion with respect to the class-wide discrimination claims, she should be prepared to discuss that request at the July 10, 2026, conference.

**SO ORDERED.**

**Date:  July 2, 2026**
       **New York, New York**

**VALERIE CAPRONI**
**United States District Judge**

18